APPEAL NO. 21-2303

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**STATIC MEDIA LLC**,
*Plaintiff-Appellee*

v.

**LEADER ACCESSORIES LLC**,
*Defendant-Appellant*

**JEN-FENG LEE**.
*Appellant*

Appeal from the United States District Court for the Western District of Wisconsin, No. 3:18-cv-00330-wmc
William M. Conley, Judge.

---

# APPELLANTS' REPLY BRIEF

---

Aaron W. Davis, Esq.
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD 57730-0735
Telephone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorney for Appellants*
*Leader Accessories LLC and Jen-Feng Lee*

## DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. P. 26.1 AND FED. CIR. R. 47.4(b)

Appellants Leader Accessories LLC and Jen-Feng Lee are the entities represented by undersigned counsel in this case and are the real parties in interest.

Appellant Leader Accessories LLC states that no parent corporation or any publicly held corporation owns 10% or more of its stock.

Jen-Feng Lee, LT Pacific Law Group LLP, Michael J. Modl, Axley Brynelson LLP, and Rodney W. Kimes, Bolgrien, Koepke & Kimes, S.C. appeared for Appellant Leader Accessories LLC in the district court.

There are no related cases, organizational victims, or bankruptcy cases.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELATED CASES ........ vi

ARGUMENT ........ 1

I. Introduction. ........ 1

II. The district court's finding of contempt is unsupported, with Static Media's only argument for affirmance coming from its distortion of testimony that is directly contradicted by the record. ........ 2

III. The district court's awards of sanctions and attorneys' fees against Appellants should be reversed because they were based on the erroneous finding of contempt and the fine – which was clearly intended to be compensatory – lacked any of the required evidentiary support. ........ 10

CONCLUSION AND RELIEF SOUGHT ........ 15

CERTIFICATE OF COMPLIANCE ........ 16

CERTIFICATE OF SERVICE ........ 16

# TABLE OF AUTHORITIES

**Cases**

*Autotech Technologies LP v. Integral Research & Develop. Corp.*, 499 F.3d 737 (7th Cir. 2007) ....................12, 14, 15
*California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)................10
*Crissen v. Gupta*, No. 2:12-cv-00355-JMS-WGH, 2014 WL 1414575 (S.D. Ind. Apr. 14, 2014)....................14
*E.E.O.C. v. Dial Corp.*, No. 99C 3356, 2001 WL 1945089 (N.D. Ill. Dec. 6, 2001) ....................12
*E.Z. by Braun v. United States*, No. 17 c 216, 2020 WL 757890 (N.D. Ill. Feb. 21, 2020) ....................13
*Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2005 WL 372253 (W.D. Wis. Feb. 11, 2005)....................13
*Gemtron Corp. v. Saint-Gobain Corp.*, 573 F.3d 1371 (Fed. Cir. 2009)................. 8
*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) .................... 5
*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017)..........................13
*Hodges v. Archer Daniels Midland Co.*, 474 F. Supp. 3d 956 (C.D. Ill. 2020)......12
*Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034 (Fed. Cir. 2017)........ 8
*In re Chase & Sanborn Corp.*, 872 F.2d 397 (11th Cir. 1989)........................11, 13
*Lunareye, Inc. v. Gordan Howard Assoc., Inc.*, 78 F. Supp. 3d 671 (E.D. Tex. 2015) ....................13, 14
*Marrocco v. General Motors Corp.*, 966 F.2d 220 (7th Cir. 1992).......................8, 9
*Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661 (7th Cir. 1996) .................8, 9
*Merchant & Evans, Inc. v. Roosevelt Building Products, Co., Inc.*, Civ. A. No. 907973, 1991 WL 261654 (E.D. Pa. Dec. 6, 1991) ..........................................10
*Multiut Corp. v. Greenberg Traurig, LLP*, No. 10 C 3238, 2011 WL 4431021 (N.D. Ill. Sept. 22, 2011) ....................12
*Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787 (7th Cir. 2009) ..........8, 9
*South Suburban Housing Center v. Berry*, 186 F.3d 851 (7th Cir. 1999)...............11
*Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019) ........................................................10
*Tripharma, LLC v. First Fruits Business Ministry*, SACV 12-404, 2013 WL 12131288 (C.D. Cal. Jan. 4, 2013)....................11
*United States v. United Mine Workers*, 330 U.S. 258 (1947).................................11
*U.S. S.E.C. v. Hyatt*, 621 F.3d 687 (7th Cir. 2010)................................................ 8

**Rules**

Fed. R. Civ. P. 37..........................................................................................12, 13

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 28(a)(4) and 47.5, Appellants state that there is no appeal in or from the same civil action or proceeding in the lower court or body previously before this or any other appellate court. Other than the civil case from which this appeal was taken, there is no case known to Appellants in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## ARGUMENT

### I. Introduction.

In its Brief,[1] Appellee Static Media[2] does not dispute Appellants' evidence of compliance but instead twists declaration testimony in an effort to create "an admission" by Appellants that they violated the Protective Order. Not only is this attempt not supported by what the declarants actually said, but it is also further contradicted by the undisputed evidence of record.

What is abundantly clear is that Appellants were authorized by the Protective Order to disclose confidential royalty information to Mr. Hecht as part of a damages evaluation for use in this case. Appellants were also free to use non-confidential case information in their discussions with Mr. Hecht regarding defenses common to this case and the South Florida Action. At no time did Appellants permit or condone Mr. Hecht's use of confidential royalty information in the South Florida Action. To the contrary, Appellants took reasonable and diligent steps to comply with the Protective Order and to inform and remind Mr. Hecht of his obligation to do so as well. The district court's finding of contempt against Appellants should be reversed,

---

[1] Appellee's Brief is short for Appellee's [Corrected] Principal Brief, Doc. 18.

[2] The same shorthand abbreviations established in Appellants' Principal Brief are continued in this Reply Brief.

which also requires the reversal of the attorneys' fees and sanctions levied against them. Moreover, the fine that the district court awarded Static Media was clearly compensatory and not coercive in nature, was unsupported by any evidence of actual loss, and should be reversed on that basis as well.

## II. The district court's finding of contempt is unsupported, with Static Media's only argument for affirmance coming from its distortion of testimony that is directly contradicted by the record.

Static Media bases the entirety of its response to Appellants' appeal on the contention that "Appellants … **admitted that they disclosed the confidential information for a purpose other than the defense of this action alone**." Appellee's Brief, p. 10 (emphasis in original).[3] **That is simply untrue.** In an effort to support its false assertion, Static Media plays word games by citing to different parts of different paragraphs of two declarations to "prove" the supposed admission. But when the record evidence is reviewed objectively and as a whole, Appellants did not violate the Protective Order, nor did they know, nor should they have known that Mr. Hecht would violate it.

As an initial matter, Static Media has purposely conflated Appellants' sharing of case information regarding common defenses with the disclosure of confidential

[3] All citations to brief pages are to the numbering identified at the bottom of the brief's page.

information to Mr. Hecht under the terms of the Protective Order. An example of Static Media's distorted interpretation is the following excerpt:

> Leader's counsel, by declaration, stated that the "joint defense consultation" encompassed "various aspects of the ***defenses***," including "***sharing*** experts" and "overall joint defense ***strategies***." Appx98, ¶ 13. The plural terms in the declaration of Leader's counsel are revealing. When Leader's counsel "sent to [Attorney Hecht] the deposition transcripts in the instant action [which included confidential information] for more effective joint defense consultation and discussion" (Appx98, ¶ 11), that meant such confidential information would be used for "more effective" discussions of the "defenses" of both actions, the "strategies" for both actions, and the "sharing" of experts for both actions. Appellants' sharing of confidential information for "joint defense" purposes, therefore, directly violated the requirement under the Protective Order that confidential information be used "solely for the purpose of this action." Appx43, ¶ 3.

Appellee's Brief, pp. 11-12 (emphasis in original).

By trying to make a mountain out of Mr. Lee's use of "plural terms," Static Media labels **all** information – whether confidential or not – about this case as "confidential information" that could not be shared with Mr. Hecht as part of a common defense. But that is a gross misstatement of the facts. Most of the defenses, experts, and strategies in this case were not in any way related to Static Media's confidential information. For instance, the entire briefing and evidentiary record related to Leader's Motion for Summary Judgment of Noninfringement and Invalidity of Static Media's D400 Patent contained no confidential information at all. *See* Appx004-006, ¶¶ 28-32, 43-46, 48-49 (all summary judgment submissions

filed publicly).[4] This was one of the primary subjects for the parties' joint defense discussions. *See* Appx098, ¶ 13 ("In light of my planned Motion for Summary Judgment ('MSJ') in April, our joint defense discussion and consultation became more active"); Appx103, ¶ 12 ("Our joint defense discussion and consultation became more active, in light of Leader Accessories' planned Motion for Summary Judgment ('MSJ') filing in April of 2019"). Likewise, Leader's expert reports regarding invalidity and non-infringement of the D400 Patent also did not contain any confidential information.[5] Appx005, ¶¶ 33-34 (expert reports filed publicly).

It is important to note that the **only** confidential information shared with Mr. Hecht was Static Media's royalty rate information, a small portion of the depositions of Gary Glazer and Anthony "T.J." DoVale.[6] Appx130, ¶ 1. Indeed, significant portions of those depositions were **not** confidential, as evidenced by the fact that portions of both transcripts were filed publicly as part of Leader's summary-judgment motion and thus were relevant to the non-confidential issues of non-infringement and invalidity. Appx005, ¶¶ 32-7 (Exhibit GG-1 - Excerpts of Gary Glazer Deposition) and 32-8 (Exhibit GG-2 - Excerpts of Anthony J. DoVale

---

[4] *Compare with* Appx005, ¶ 35 (an example of a document filed under seal).

[5] No expert reports regarding damages were ever filed by the parties. Appx003-007.

[6] Mr. DoVale is the sole named inventor on the D400 Patent. Appx054. He was also the managing member of Static Media and a patent attorney working at Static Media's law firm, FisherBroyles LLP. Appx053.

Deposition). Indeed, none of the confidential information provided to Mr. Hecht related to noninfringement or invalidity. Appx130, ¶ 1. It was therefore reasonable and proper for Mr. Lee and Mr. Hecht to discuss joint defense strategies that related to Static Media's assertion of the D400 Patent against both their clients without running afoul of the terms of the Protective Order. *See* Appx098, ¶ 13; Appx103-104, ¶ 14.

With respect to the confidential royalty information, although Static Media concedes "Appellants may not have known Attorney Hecht would use the confidential information in those precise settlement discussions," Static Media nonetheless asserts that "they certainly knew (by their own admission) that Attorney Hecht would use such information for the defense of OJ Commerce – since that was one of the defenses inherently comprising the 'joint defense.'" Appellee's Brief, p. 12. But again, Static Media's contention is a misrepresentation of the facts. Appellants were explicitly authorized to disclose confidential information and consult with Mr. Hecht about a damages evaluation as it related to *this case* under the terms of the Protective Order.[7] Appx043-44, ¶ 4(f) and ¶ 5 (authorizing the

[7] Indeed, a "damages evaluation" could be done for *this case* by considering some or all the 15 *Georgia-Pacific* factors identified in that seminal case regarding what constitutes a reasonable patent royalty. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factors including "the royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty").

disclosure of "Confidential" or Highly Confidential – Trial Counsels' Eyes Only" information to persons furnishing consulting services in this action); *see also* Appx098, ¶ 13 ("[Mr. Hecht] and I discussed various aspects of the defenses, including … damages evaluation"). What Mr. Hecht was not allowed to do was use the confidential royalty information for the purposes of an action *other than this one*. Appx051.

This is where the rubber meets the road regarding Appellants' compliance with the terms of the Protective Order. Mr. Lee recognized the need to have Mr. Hecht sign the Notice of Adherence to Protective Order before disclosing the only confidential information provided to Mr. Hecht – *i.e.,* Static Media's royalty rate. Appx130, ¶¶ 1-3. This procedure was designed to protect not only Static Media's confidential information, but also Mr. Lee, who had an interest in following the Protective Order and taking reasonable steps to comply with it. *See* Appx130-131, ¶ 3 ("I know Mr. Hecht is bound [by] the terms of the PO") and ¶ 7 ("during all relevant time, I was under the belief that I respect the Court's authority and comply with the terms of the PO"). Indeed, Mr. Lee "had no reason to expect that OJ Commerce's counsel would use the information in violation of the PO, given that [Mr. Lee] had [Mr. Hecht] sign the Acknowledgement and gave him repeated reminders about the PO." Appx130, ¶ 3; *see also* Appx106-107; Appx115; Appx132. And Appellants "had every reason to expect that Mr. Hecht would

propound his own discovery to find out about the royalty information" for purposes of the South Florida Action. Appx130-131, ¶ 4.

In short, Appellants were by no means precluded from discussing with Mr. Hecht defenses they had in common with OJ Commerce that did not relate to Static Media's confidential information. And Appellants had a legitimate reason to disclose the confidential royalty information to Mr. Hecht – so that he could consult with Appellants about a damages evaluation *in this case*. Had Mr. Hecht wished to use Static Media's royalty rate information in the South Florida Action, he was obligated to obtain that information through discovery *in that case*. Appx130-131, ¶ 4; *accord* Appx022 (Mr. Hecht was "free to obtain the same confidential information legitimately as part of [the South Florida Action], as he notes" (citing Appx103, ¶ 13)).

As shown above, the only "evidence" Static Media offered to support the district court's finding of contempt was an alleged "admission" that amounts to nothing more than Static Media's conflation of non-confidential and confidential information into one category. And importantly, Static Media does not dispute Appellants' evidence of compliance other than by baldly claiming that Appellants' reasonable and diligent efforts "do[] not matter." Appellee's Brief, pp. 12-13. But

attorney arguments are no substitute for evidence,[8] let alone the clear and convincing evidence required for a civil contempt finding. *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) ("To prevail on a request for a [civil] contempt finding, the moving party must establish [four elements] by clear and convincing evidence"). There simply is no evidence that Appellants violated the Protective Order, failed to substantially comply with the order, **and** failed to make a reasonable and diligent effort to comply. *Id.* (listing elements required for a finding of civil contempt).

As a last-ditch effort to defend the district court's erroneous finding of contempt, Static Media cites three cases, *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661 (7th Cir. 1996), *Marrocco v. General Motors Corp.*, 966 F.2d 220 (7th Cir. 1992), and *Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787 (7th Cir. 2009). But all those cases are irrelevant because they involve totally different, egregious facts not in any way present here. In *Melendez*, the contemnor was previously sanctioned under Rule 11, violated numerous court orders to produce certain documents, concealed the documents' existence from the opposing party and the court for months, concealed information related to those documents during multiple depositions, and only produced the documents two working days before trial.

---

[8] *Icon Health and Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence."); *Gemtron Corp. v. Saint-Gobain Corp.*, 573 F.3d 1371, 1380 (Fed. Cir. 2009) ("[U]nsworn attorney argument … is not evidence and cannot rebut … other admitted evidence ….").

*Melendez*, 79 F.3d at 666-67. In *Marrocco*, which involved two consolidated appeals, one set of contemnors violated a protective order and, in the process, destroyed evidence, and then lied about it, with the other contemnor losing critical evidence, showing "a flagrant disregard of its assumed duty, under the protective order, to preserve and monitor the condition of evidence which could be pivotal in a lawsuit." *Marrocco*, 966 F.2d at 223-25. In *Salmeron*, the plaintiff's attorney:

> [E]ngaged in what the judge described as a "virtually unbroken pattern of dilatory and irresponsible conduct," consistently missing filing deadlines and failing to appear at status conferences. Fed up with [the attorney's] repeated flouting of the court's rules, the district court dismissed the suit sua sponte. Though ultimately persuaded to reinstate the action, the district court issued a "final warning" to [the plaintiff's attorney] that future misconduct would not be tolerated. Only a short time later, however, [the attorney] breached an oral agreement he had with opposing counsel and leaked a document obtained through discovery to three separate sources[, including to the media].

*Salmeron*, 579 F.3d at 789.

*Melendez*, *Marrocco*, and *Salmeron* involved extraordinary situations involving destruction of evidence, cover-ups, years-long misconduct, lying under oath, disclosing confidential information to the media, and the like, none of which were even remotely present in this case. Here, Appellants disclosed a limited amount of Static Media's confidential royalty information to its consulting attorney, Mr. Hecht, as authorized by the Protective Order for use in evaluating damages for this case and took reasonable and diligent steps to ensure that the terms of that Order were followed, including that the confidential royalty information was only to be

used in this case. Only when seven months had passed, after the case was dismissed, did Mr. Hecht disclose the information to *Static Media's own attorneys* (but not to a third party, his client, or the media) in the South Florida Action. Not only are these circumstances entirely different than in the cases cited by Static Media, but Appellants cannot be held in contempt for the unilateral actions of Mr. Hecht, especially after the repeated efforts they made to inform and remind Mr. Hecht of his obligations under the Protective Order. *Merchant & Evans, Inc. v. Roosevelt Building Products, Co., Inc.*, Civ. A. No. 907973, 1991 WL 261654, at *2 (E.D. Pa. Dec. 6, 1991) (denying plaintiff's motion for civil contempt, holding "the defendant cannot be held in contempt for the actions of a third party"). Given Appellants' reasonable and diligent efforts to comply, "there is [a] *fair ground of doubt* as to the wrongfulness of the [Appellants'] conduct," and thus they should not have been held in contempt. *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019) (emphasis in original) (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). The district court's contempt finding against Appellants should therefore be reversed.

## III. The district court's awards of sanctions and attorneys' fees against Appellants should be reversed because they were based on the erroneous finding of contempt and the fine – which was clearly intended to be compensatory -- lacked any of the required evidentiary support.

Although Static Media continues to urge that Appellants were properly found in contempt, Static Media does not dispute the axiom that if the contempt finding is

reversed, there is no basis to award sanctions and attorneys' fees against Appellants. (*See* Appellee's Brief, pp. 13-14.) Therefore, because the district court's finding of contempt must be reversed as described *supra*, the district court's awards of sanctions and attorneys' fees must also be reversed. *See Tripharma, LLC v. First Fruits Business Ministry*, SACV 12-404, 2013 WL 12131288, at *3 (C.D. Cal. Jan. 4, 2013) ("Because the Court makes no finding of contempt, the Court awards no sanctions.").

As to the $1,000 fine, "[c]ivil contempt sanctions may be imposed for either or both of two distinct purposes, [1] to coerce compliance with a court order, and [2] to compensate the complainant for actual losses sustained by him as the result of the defendants' contumacy." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400-01 (11th Cir. 1989) (citing *United States v. United Marine Workers of Am.*, 330 U.S. 258, 303-04 (1947)); *South Suburban Housing Center v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999) (same). "If the fine is compensatory, it is payable to the complainant and must be based on proof of the complainant's actual loss." *In re Chase & Sanborn Corp.*, 872 F.2d at 401; *South Suburban Housing*, 186 F.3d at 854 ("When the purpose of sanctions in a civil contempt proceeding is compensatory, a fine, payable to the complainant, must be based on evidence of actual loss."). "If the fine is coercive **it is paid into the court registry, not to the complainant**." *In re Chase & Sanborn Corp.*, 872 F.2d at 401 (emphasis added).

It is undisputed that neither Static Media nor the district court identified or even offered any evidence of actual loss to Static Media, with Static Media conceding that no such evidence was presented.[9] *See Multiut Corp. v. Greenberg Traurig, LLP*, No. 10 C 3238, 2011 WL 4431021, at *5 (N.D. Ill. Sept. 22, 2011) (because "Plaintiffs do not respond to these arguments[,] they essentially concede that they have failed to allege damages"); *Hodges v. Archer Daniels Midland Co.*, 474 F. Supp. 3d 956, 967 (C.D. Ill. 2020) ("Indeed, Plaintiff does not respond at all to Defendants' arguments … and therefore, has waived any opposition to them and concedes the argument" (collecting cases)). Accordingly, it was an abuse of discretion to assess a compensatory fine without any supporting evidence. *Autotech Technologies LP v. Integral Research & Develop. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007) (finding that the district court abused its discretion when "[n]owhere was there evidence of … actual losses Autotech was suffering"); *see also E.E.O.C. v. Dial Corp.*, No. 99C 3356, 2001 WL 1945089, at *6 (N.D. Ill. Dec. 6, 2001) (denying movant compensatory damages because "[t]here simply is no evidence" "that it has suffered any actual damages as a result of the disclosure").[10]

---

[9] Nor could Static Media have suffered any actual loss because Mr. Hecht only shared Static Media's confidential information with *Static Media's* counsel, **not** with his client OJ Commerce or any third party. Appx104, ¶¶ 16-17.

[10] In a footnote, Static Media attempts to imply a distinction between contempt "sanctions imposed under Federal Rule of Civil Procedure 37" and those imposed on other grounds as it relates to the requirement for an evidentiary basis for actual

To further illustrate the compensatory nature of the fine, the district court ordered that Appellants "must pay $1,000 in sanctions to plaintiff Static Media LLC," not the district court.[11] Appx026. Magistrate Judge Crocker undoubtedly knew that when a fine was coercive, it was to be paid to the court, not the complainant, as the Judge had previously ordered such a deterrent sanction in another case. *See Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2005 WL 372253, at *4, 11 (W.D. Wis. Feb. 11, 2005) (Crocker, J.) (granting in part motion to enforce protective order and ordering payment of "a sanction of $4000 to the Clerk of Court" "as a specific and general deterrent to future violations in this case and in others").

Indeed, Static Media cited other cases that also found when a fine was for a deterrent effect, the fine was paid to the court, not the opposing party. *See Lunareye,*

---

loss. (*See* Appellee's Brief, p. 16, n.2.) Not only does Static Media fail to cite *any case* that substantiates its alleged distinction, but case law refutes it. *See, e.g., In re Chase & Sanborn Corp.*, 872 F.2d at 400-01 (discussing contempt "sanctions under Rule 37" when concluding that "[i]f a fine is compensatory, **it … must be based on proof of the complainant's actual loss**" (emphasis added)). Even Static Media cited a case that concluded that "district courts must only order sanctions that serve to redress wronged parties for losses sustained. In other words, **all sanctions must be compensatory in nature**." *E.Z. by Braun v. United States*, No. 17 c 216, 2020 WL 757890, at *2 (N.D. Ill. Feb. 21, 2020) (internal citation omitted) (emphasis added) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)).

[11] Appellants paid the sanctions and fees in full to Static Media on August 20, 2021. 7th Cir. No. 21-2399, Doc. 8 (appeal transferred to this Court by Order issued on September 9, 2021 (7th Cir. No. 21-2399, Doc. 9)).

*Inc. v. Gordan Howard Assoc., Inc.*, 78 F. Supp. 3d 671, 676 (E.D. Tex. 2015) (ordering sanctions "in the amount of $2,500.00, which is payable to the Clerk of this Court" to "deter future violations in this suit, and serve as an adequate general deterrent for similar conduct"); *Crissen v. Gupta*, No. 2:12-cv-00355-JMS-WGH, 2014 WL 1414575, at *7 (S.D. Ind. Apr. 14, 2014) (ordering that $2000 shall be paid to the Clerk of Court as a deterrence because "further violation of Court orders will not be tolerated"). The fine in this case was therefore intended as compensatory to Static Media – because the fine was to be paid to it – rather than coercive, in which the fine would have been ordered paid to the court. Appx026.

But there is even more evidence that the fine was intended by the district court to be compensatory, not a deterrent. "When the purpose is to make the defendant comply, **the court must consider the "character and magnitude of the harm threatened by continued contumacy**, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Autotech*, 499 F.3d at 752 (emphasis added)). Here, there was no threat of "continued contumacy" that necessitated a coercive fine because **28 months** had elapsed between Appellants' disclosure of confidential royalty information to Mr. Hecht (in February 2019) and when the district court levied the fine (in June 2021), and **21 months** since the case had been dismissed with prejudice. *Compare* Appx115 *with* Appx026; Appx076-077. Thus, under the circumstances, there was no reason to believe that there was a

threat of continued alleged violations by Appellants that required deterrence. *See Autotech*, 499 F.3d at 752 (finding the district court abused its discretion when it found Integral in contempt and set a fine of $5,000 per day when "[n]owhere was there evidence of either the actual losses Autotech was suffering or what it might take to ensure Integral's compliance"). Accordingly, the district court's fine imposed against Appellants was clearly intended to be compensatory, lacked any supporting evidence, and should be reversed.

## CONCLUSION AND RELIEF SOUGHT

Based on the foregoing, Appellants respectfully request that this Court reverse the district court's finding of contempt of court against Appellants, reverse the sanctions and attorneys' fees awarded against Appellants, and grant Appellants such further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: January 17, 2022

By: /s/ Aaron W. Davis

Aaron W. Davis, Esq.
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD 57730-0735
Telephone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorney for Appellants*
*Leader Accessories LLC and Jen-Feng Lee*

## CERTIFICATE OF COMPLIANCE

I certify that the size and style of type used in this brief is Times New Roman 14-point font and it contains 3,738 words, according to Microsoft Word, the word-processing system used to prepare this document. This certificate complies with the requirements of Federal Rules of Appellate Procedure 32(g)(1) and Fed. Cir. R. 32(b)(3).

By: /s/ Aaron W. Davis
Aaron W. Davis, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the ECF system and e-served on counsel of record noted below, this 17th day of January, 2022 in accordance with Fed. R. App. P. 25(d)(1)(B) and Fed. Cir. R. 25(e).

By: /s/ Aaron W. Davis
Aaron W. Davis, Esq.

**COUNSEL OF RECORD**

Deborah C. Meiners, Esq.
Harry E. Van Camp, Esq.
Elijah B. Van Camp, Esq.
DeWitt LLP
2 E. Mifflin Street, Suite 600
Madison, WI 53703
Email: dcm@dewittllp.com; hvc@dewittllp.com; evc@dewittllp.com

*Counsel for Appellee Static Media LLC*