APPEAL NO. 21-2303

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**STATIC MEDIA LLC**,
*Plaintiff-Appellee*

v.

**LEADER ACCESSORIES LLC**,
*Defendant-Appellant*

**JEN-FENG LEE**.
*Appellant*

Appeal from the United States District Court for the Western District of Wisconsin, No. 3:18-cv-00330-wmc
William M. Conley, Judge.

---

**APPELLANTS' [CORRECTED] PRINCIPAL BRIEF**

---

Aaron W. Davis, Esq.
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD 57730-0735
Telephone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorney for Appellants*
*Leader Accessories LLC and Jen-Feng Lee*

## DISCLOSURE STATEMENT PURSUANT TO FED. R. APP. P. 26.1 AND FED. CIR. R. 47.4(b)

Appellants Leader Accessories LLC and Jen-Feng Lee are the entities represented by undersigned counsel in this case and are the real parties in interest.

Appellant Leader Accessories LLC states that no parent corporation or any publicly held corporation owns 10% or more of its stock.

Jen-Feng Lee, LT Pacific Law Group LLP, Michael J. Modl, Axley Brynelson LLP, and Rodney W. Kimes, Bolgrien, Koepke & Kimes, S.C. appeared for Appellant Leader Accessories LLC in the district court.

There are no related cases, organizational victims, or bankruptcy cases.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iv

STATEMENT OF RELATED CASES ........ vi

JURISDICTIONAL STATEMENT ........ 1

ORAL ARGUMENT STATEMENT ........ 3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........ 4

STATEMENT OF THE CASE AND FACTS ........ 5

SUMMARY OF THE ARGUMENT ........ 13

ARGUMENT ........ 15

I. Standard of Review. ........ 15

II. The district court erred in finding Appellants at fault and to have acted willfully and in bed faith when it found Appellants in contempt of court related to their disclosure of confidential documents to Mr. Hecht pursuant to the terms of the Protective Order. ........ 17

III. The district court erred in awarding sanctions and attorneys' fees against Appellants based on the erroneous finding of contempt and because there was no evidence of Static Media's actual loss caused by Appellants' allegedly contemptuous action. ........ 22

CONCLUSION AND RELIEF SOUGHT ........ 24

CERTIFICATE OF COMPLIANCE ........ 26

CERTIFICATE OF SERVICE ........ 26

ADDENDUM ........ 28

# TABLE OF AUTHORITIES

## Cases

*American Nat'l Bank & Trust Co. v. Equitable Life*, 406 F.3d 867 (7th Cir. 2005) 4, 14, 15, 16, 22
*Autotech Technologies LP v. Integral Research & Develop. Corp.*, 499 F.3d 737 (7th Cir. 2007) ....................4, 14, 23, 24
*Boude v. City of Raymore*, 855 F.3d 930 (8th Cir. 2017)....................21
*California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)....................16
*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).................... 1
*Christianson v. Colt Indus. Operating Corp.*, 798 F.2d 1051 (7th Cir. 1986)......... 2
*Colorado v. New Mexico*, 467 U.S. 310 (1984)....................18
*E.E.O.C. v. Dial Corp.*, No. 99C 3356, 2001 WL 1945089 (N.D. Ill. Dec. 6, 2001) ....................24
*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770 (9th Cir. 1983)........21
*Ferrell v. Pierce*, 785 F.2d 1372 (7th Cir. 1986) ....................15
*Graves v. Kemsco Group, Inc.*, 852 F.2d 1292 (Fed. Cir. 1988)....................15
*Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6 (N.D. Ill. 1986) ......20, 23, 24
*In re BBC Int'l, Ltd.*, 99 F.3d 811 (7th Cir. 1996) .................... 1
*In re Golant*, 239 F.3d 931 (7th Cir. 2001)....................16
*Langley v. Union Elec. Co.*, 107 F.3d 510 (7th Cir. 1997)....................15
*Maynard v. Nygren*, 372 F.3d 890 (7th Cir. 2004)....................16
*Merchant & Evans, Inc. v. Roosevelt Building Products, Co., Inc.*, Civ. A. No. 907973, 1991 WL 261654 (E.D. Pa. Dec. 6, 1991)....................19, 20
*Panduit Corp v. All States Plastic Mfg., Inc.*, 744 F.2d 1564 (Fed. Cir. 1984) ......15
*Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533 (7th Cir. 2008)...17
*Salgado v. Gen. Motors Corp.*, 150 F.3d 735 (7th Cir. 1998) ....................16
*South Suburban Housing Center v. Berry*, 186 F.3d 851 (7th Cir. 1999).........14, 23
*Taggart v. Lorenzen*, 139 S.Ct. 1795 (2019) .................... 4, 13, 16, 17, 22
*Tranzact Tech., Inc. v. ISource Worldsite*, 406 F.3d 851 (7th Cir. 2005)....4, 14, 22, 23
*Tripharma, LLC v. First Fruits Business Ministry*, SACV 12-404, 2013 WL 12131288 (C.D. Cal. Jan. 4, 2013)....................22
*United States v. Baker*, 641 F.2d 1311 (9th Cir. 1981) ....................20
*United States v. United Mine Workers*, 330 U.S. 258 (1947)....................23
*U.S. S.E.C. v. Hyatt*, 621 F.3d 687 (7th Cir. 2010)....................13, 17, 19

*U.S. v. Armstrong*, 781 F.2d 700 (9th Cir. 1986).............................................20, 21
*Von Gonten v. Research Systems Corp.*, 739 F.2d 1264 (7th Cir. 1984)..........17, 18
*Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787 (1987) ..............17

**Statutes**

28 U.S.C. § 1295.......................................................................................... 1
28 U.S.C. § 1338.......................................................................................... 1

**Other Authorities**

11A C. Wright A. Miller & M. Kane, Federal Practice and Procedure § 2960 ......16

**Rules**

Fed. R. App. P. 4(a)(1)(A) ............................................................................ 2
Fed. R. Civ. P. 37...........................................................................................9, 12

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 28(a)(4) and 47.5, Appellants state that there is no appeal in or from the same civil action or proceeding in the lower court or body previously before this or any other appellate court. Other than the civil case from which this appeal was taken, there is no case known to Appellants in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

## JURISDICTIONAL STATEMENT

The district court's subject matter jurisdiction in this case was based on 28 U.S.C. § 1338(a), due to the alleged infringement of Appellee Static Media LLC's patent by Appellant Leader Accessories LLC. Appx028, ¶ 3. "If the district court's jurisdiction rests on a patent claim, then an appeal from an entirely non-patent disposition goes to the federal circuit." *In re BBC Int'l, Ltd.*, 99 F.3d 811, 813 (7th Cir. 1996).

"The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over certain appeals, including those cases where the jurisdiction of the district court is based, in whole or in part, on 28 U.S.C. § 1338(a)." *See* 28 U.S.C. § 1295(a)(1); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 807, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Thus, this Court's appellate jurisdiction is based on 28 U.S.C. § 1295(a)(1), as Appellants seek review of orders by the district court finding Appellants in contempt of court and awarding sanctions against them, the last order of which was issued on July 1, 2021. Appx011-027. Indeed, "if any part of the district court's jurisdiction could have been based on Sec. 1338, the Federal Circuit has exclusive jurisdiction over the entire appeal. Non-patent issues in the suit, even if they have their genesis in federal law, are for the purposes of establishing appellate jurisdiction considered pendent to the patent claims."

*Christianson v. Colt Indus. Operating Corp.*, 798 F.2d 1051, 1058 (7th Cir. 1986) (collecting Federal Circuit cases).

This appeal was timely filed on July 30, 2021, as specified by Fed. R. App. P. 4(a)(1)(A), and is from the final order concerning the finding of contempt and sanctions against Appellants. Appx134-135.

## ORAL ARGUMENT STATEMENT

Appellants contend that their appeal would benefit from oral argument and respectfully request the Federal Circuit for 20 minutes for that argument.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

(1) The district court erred in finding Appellants at fault and to have acted willfully and in bad faith when the district court found Appellants in contempt of court related to their disclosure of confidential documents to their consulting attorney Shlomo Hecht pursuant to the terms of the Protective Order. *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019); *American Nat'l Bank & Trust Co. v. Equitable Life*, 406 F.3d 867, 877-78 (7th Cir. 2005).

(2) The district court erred in awarding sanctions and attorneys' fees against Appellants based on the erroneous finding of contempt, *Tranzact Tech., Inc. v. ISource Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005) and *American Nat'l Bank*, 406 F.3d at 877-78, and because there was no evidence of actual loss to Appellee Static Media LLC caused by Appellants' allegedly contemptuous action. *Autotech Technologies LP v. Integral Research & Develop. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007).

The district court's finding of contempt of court against Appellants and the finding that Appellants were at fault, willful, and acted in bad faith should be reversed. The district court's awarding of sanctions and attorneys' fees against Appellants should also be reversed.

## **STATEMENT OF THE CASE AND FACTS**

Appellant Leader Accessories LLC ("Leader") was a defendant in a patent infringement lawsuit filed on May 7, 2018 by Appellee Static Media LLC ("Static Media") related to United States Patent No. D771,400 ("D400 Patent"). *See, e.g.,* Appx028-029, ¶¶ 3, 6, 9. On June 20, 2018, Leader filed its Answer to Static Media denying infringement and asserting, *inter alia*, defenses of patent invalidity. Appx036-039.

On September 14, 2018, the parties jointly moved for entry of a Stipulated Protective Order "to facilitate the progress of disclosure and production of documents under the Federal Rules of Civil Procedure and the Local Rules of the Court." Appx040-042. The Court accepted and entered the Stipulated Protective Order ("Protective Order") on that same day. Appx052. In that Protective Order, the parties could designate documents and information as "Confidential" or Highly Confidential – Trial Counsels' Eyes Only." Appx043, ¶ 1. "All Confidential information and documents, along with the information contained in the documents, shall be used solely for the purpose of this action and no person receiving information or documents shall, directly or indirectly, transfer, disclose or communicate in any way the information or the contents of the documents to any person other than those specified in paragraph 4." Appx043, ¶ 3. Under both designation levels, it was permissible to disclose confidential materials to "outside

independent persons (*i.e.,* persons not currently or formerly employed by, consulting with or otherwise associated with any party) who are retained by a party or its attorneys **to furnish consulting, technical or expert services** and/or to give testimony in this action and have executed the 'Written Assurance' as specified below." Appx043-044, ¶ 4(f) and ¶ 5 (emphasis added). Indeed, the Protective Order mandated that:

> Before any person designated in 4(f) is given access to Confidential or Highly Confidential – Trial Counsels' Eyes Only information, the individual shall first read this Order and, as is appropriate under the circumstances, either execute a "Written Assurance" in the form attached hereto as Exhibit A, acknowledge on the record that he or she has read and agrees to be bound by the terms of the Order and the jurisdiction of this Court for the sole purpose of enforcing same, or otherwise agree in writing to be bound by the terms of this Order and to submit to the jurisdiction of this Court for the sole purpose of enforcing this Order.

Appx045, ¶ 7.

The "Written Assurance" or "Notice of Adherence to Protective Order" stated that the receiving person "agree[s] to comply with and by bound by the provisions of the Protective Order." Appx050. The person signing it also agreed to "not divulge any information or documents or copies of documents designated Confidential or Highly Confidential – Trial Counsels' Eyes Only obtained pursuant to such Protective Order or the contents of such documents to any person other than those specifically authorized by the Protective Order." Appx050-051. The signing person

also promised to "not copy or use such information or documents except for the purposes of this action and pursuant to the terms of the Protective Order." Appx051.

During the case, Mr. Jen-Feng ("Jeff") Lee, lead counsel for Leader, learned that Static Media had sent a cease-and-desist letter to a third party, OJ Commerce, LLC ("OJ Commerce"), about the D400 Patent, the same patent at issue in this case. Appx096-097, ¶ 4. During November/December 2018, Mr. Lee and Mr. Shlomo Hecht, counsel for OJ Commerce, communicated and agreed to form a Joint Defense Group ("JDG") to discuss litigation strategy and defenses. Appx097, ¶¶ 5-6. Subsequently, on January 30, 2019, Static Media filed a patent infringement lawsuit related to the D400 Patent against OJ Commerce in the United States District Court for the Southern District of Florida ("South Florida Action"). Appx097, ¶ 7. Mr. Lee and Mr. Hecht signed a Joint Defense Agreement ("JDA") on February 15, 2019. Appx097, ¶ 8.

On February 19, 2019, Mr. Lee provided Mr. Hecht a copy of the Protective Order in the district court action and asked Mr. Hecht a sign the Notice of Adherence to the Protective Order ("Notice"), which confirmed in part that Mr. Hecht "shall not copy or use [Confidential or Highly Confidential – Trial Counsels' Eyes Only] information or documents except for the purposes of *this action* and pursuant to the terms of the Protective Order." Appx098, ¶ 10; Appx106-107 (emphasis added). Mr. Hecht signed and returned the Notice to Mr. Lee on that same day, February 19.

Appx098, ¶ 10; Appx106-107. After receiving the signed Notice, on that same day, Mr. Lee sent Mr. Hecht two deposition transcripts from the district court action, for more effective joint defense consultation and discussion. Appx098, ¶ 11. The transcripts contained certain Static Media confidential materials, such as royalty rate information. Appx098, ¶ 11. When the transcripts were sent by Mr. Lee to Mr. Hecht, Mr. Lee reminded Mr. Hecht about the Protective Order's "Confidential AEO designation" of the materials. Appx115; Appx132. When Leader's expert report of Ron Kemnitzer was transmitted to Mr. Hecht about a week later, Mr. Lee again reminded Mr. Hecht to "please adhere to the protective order." Appx132.

Without disclosing the privileged and confidential content of the consultation, Mr. Hecht and Mr. Lee discussed various aspects of the defenses, including issues of retaining/sharing experts, damages evaluation, invalidity and non-infringement arguments in Leader's motion for summary judgment filing, overall joint defense strategies, etc. Appx098, ¶ 13. On August 30, 2019, **over six months** after Mr. Hecht had received the Static Media confidential materials under the terms of the protective order, the district court granted Leader's summary-judgment motion of non-infringement. Appx076, ¶ 1. The clerk of court entered judgment in favor of Leader dismissing the case the same day. Appx077. Static Media did not appeal the district court's finding of non-infringement.

On September 11, 2019, **nearly seven months** after receiving the confidential information from Mr. Lee, Appx115, and without prior notice to Mr. Lee, Appx130, ¶ 3, Mr. Hecht disclosed to Static Media's counsel during a settlement conversation that he was aware of Static Media's royalty rate information and that he thus knew that Static Media's royalty demand from OJ Commerce was outrageously high. Appx104, ¶ 16. Mr. Hecht did not share Static Media's confidential information with OJ Commerce, any party, or any non-attorney, only with Static Media's counsel. Appx104, ¶¶ 16-17.

Thereafter on October 18, 2019, Static Media brought a motion for sanctions against Leader. Appx142, Doc. 58. Leader opposed the motion, asserting, *inter alia*, that Mr. Hecht was a contractual consulting attorney who agreed to abide by the terms of the Protective Order, including that Mr. Hecht would not "use [confidential] information or documents except for purposes of this action," was repeatedly reminded of those obligations by Leader's counsel, and thus Appellants Leader and Mr. Lee (collectively, "Appellants") committed no violation. Appx097-099; *see also* Appx106-107. Nonetheless, the Magistrate Judge found on December 27, 2019 that Appellants were "at fault and [Leader] acted willfully and in bad faith by disclosing confidential and highly confidential information to third parties in violation of the [P]rotective [O]rder" and should be sanctioned under Federal Rule of Civil Procedure 37, even though Appellants followed the procedures spelled out

in the Protective Order before disclosing any confidential information to Mr. Hecht and repeatedly reminded Mr. Hecht about adhering to the Protective Order. Appx017; Appx115, Appx130. Indeed, it wasn't until **nearly seven months** after receiving the confidential information that the contempt-triggering event occurred, when Mr. Hecht used it in a settlement discussion with Static Media's counsel. *Compare* Appx132 *with* Appx104, ¶ 16. And although the Magistrate Judge stated that "Hecht himself admits that he used the confidential information he received from Leader to bolster OJ Commerce's defense in the Florida litigation, *and he made those intentions clear to Leader's counsel before entering the JDA*," the Magistrate Judge cites no evidence for its conclusion in the italicized, latter half of the sentence. Appx016. In fact, the Magistrate Judge's conclusion is contradicted by the record evidence that Mr. Lee's supplied, and Mr. Hecht signed, the Notice of Adherence to the Protective Order. Appx098, ¶ 10; Appx106-107; *see also* Appx130, ¶ 3 (Mr. Lee testifying that "[he] had no reason to expect that OJ Commerce's counsel would use the information in violation of the PO, given that I had him sign the Acknowledgement and gave him repeated reminders about the PO") and Appx132.

Appellants thereafter appealed the Magistrate Judge's ruling that Leader was in contempt of court to the district court, which was denied on January 5, 2021. Appx022. In its order, the district court stated:

> The material question, however, is whether defendant's counsel provided the confidential information to OJ Commerce and its counsel

> "solely for purpose of this action." The obvious answer is a resounding "no," since whatever arguable role they may have played in assisting defendant as a so-called 4(f) "consultant," **defendant's counsel had to know** that OJ Commerce's and its counsel's principal use of the information would be in defending against the separate lawsuit brought against it. Defendant presents nothing to the contrary in its submissions to this court.

Appx021 (emphasis added). As with the Magistrate Judge's conclusion, the district court's assertion that "defendants' counsel had to know that OJ Commerce's and its counsel's principal use of the information would be in defending against the separate lawsuit brought against it" is unsupported by any evidence. Again, this conclusion is contradicted by Mr. Lee's supplying and Mr. Hecht's signing of the Notice of Adherence to the Protective Order. Appx098, ¶ 10; Appx106-107. Incredibly, the district court even found that Leader "chose to act surreptitiously" despite there being no evidence to support such a conclusion. Appx022. The district court then set a briefing schedule for a determination of a proposed fine and an award of attorney's fees and costs related to Static Media's motion for sanctions. Appx022-023.

The parties thereafter briefed the fine and fees issue, with even more evidence coming to light that Mr. Lee repeatedly reminded Mr. Hecht of his obligations with respect to the Protective Order prior to and at the time confidential information was provided to Mr. Hecht. Appx113, Appx115, Appx130, ¶ 3, Appx132. Mr. Lee also submitted sworn testimony that he "had every reason to expect that Mr. Hecht would

propound his own discovery to find out about the royalty information (he is 'free to obtain the same confidential information,' as the Court noted), in light of the pace of the OJ Commerce case lagging substantially behind the Wisconsin case." Appx130-131, ¶ 4. Mr. Lee also testified about his good faith belief that he complied with the terms of the Protective Order ("PO"):

> Throughout this litigation, as well as many other cases I handled, I pride myself in being ethical and upholding my obligations as an officer of the court. On this PO issue, during all relevant time, I was under the belief that I respect the Court's authority and comply with the terms of the PO; I never realized that I committed any wrongdoing. Appx131, ¶ 7.

Nonetheless, the Magistrate Judge found, pursuant to Rule 37, on June 17, 2021 that "Leader … and its counsel must pay $1000 in sanctions to plaintiff Static Media" – an amount unsupported by any evidence of actual loss by Static Media – and that they "must pay $10,000 in attorneys' fees to Static Media's attorneys." Appx025-026. On June 29, 2021, Leader's filed its Rule 72(a) Objection to the Magistrate Judge's June 17, 2021 order awarding sanctions and attorneys' fees. Appx027. The district court overruled Leader's objection on July 1, 2021. Appx027.

Appellants Leader and Mr. Lee timely appealed on July 30, 2021 the district court's "final Text Only Order on sanctions entered in this action on July 1, 2021, Docket No. 81, including all prior interlocutory rulings." Appx134.

## SUMMARY OF THE ARGUMENT

Appellants are appealing on two bases:

(1) The district court erred in finding Appellants at fault and to have acted willfully and in bad faith when the district court found Appellants in contempt of court related to their disclosure of confidential documents to Mr. Hecht pursuant to the terms of the Protective Order. Appellants made reasonable and diligent efforts to comply with the Protective Order. *See U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). Indeed, Appellants had Mr. Hecht sign the Notice of Adherence to Protective Order prior to disclosing any confidential information to him, and repeatedly reminded him of his obligation to abide by the terms of that Order. There is also no evidence, let alone clear and convincing evidence, that Appellants intended to violate the Protective Order themselves or knew that Mr. Hecht would use the confidential information nearly seven months later in a settlement communication with Static Media. The district court should not have found Appellants in contempt, at fault, willful, or in bad faith, where, as here, "there is [a] fair ground of doubt as to the wrongfulness of [Appellants'] conduct." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019).

(2) The district court erred in awarding sanctions and attorneys' fees against Appellants based on the erroneous finding of contempt and because there was no evidence of actual loss to Static Media caused by Appellants' allegedly

contemptuous action. Because there was no basis to find Appellants in contempt, there was no basis to assess sanctions and attorneys' fees against them. *American Nat'l Bank*, 406 F.3d at 877-78 ("[d]iscovery sanctions may only be imposed where a party displays willfulness, bad faith, or fault"); *cf. Tranzact Tech., Inc. v. ISource Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005) (a trial court may award attorneys' fees "upon a finding of civil contempt"). Moreover, a fine to be paid to Static Media must be based on evidence of actual loss. *South Suburban Housing Center v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999). However, neither Static Media nor the district court identified any evidence of actual loss when proposing or levying the fine against Appellants. Therefore, it was an abuse of discretion to assess a fine without any evidence of actual loss. *Autotech Technologies LP v. Integral Research & Develop. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007).

# ARGUMENT

## I. Standard of Review.

This appeal originated from the United States District Court for the Western District of Wisconsin, which lies within the Seventh Circuit. Appx134. Seventh Circuit law governs the issues raised in this appeal, because a finding of civil contempt is governed by the law of the particular regional circuit where the appeal from the district court this Court is reviewing would normally lie. *See Graves v. Kemsco Group, Inc.*, 852 F.2d 1292, 1292 (Fed. Cir. 1988) (noting that "our review of the district court's Memorandum and Order holding [the plaintiff] in civil contempt is governed by the law of the Seventh Circuit rather than by the law of this Court"); *Panduit Corp v. All States Plastic Mfg., Inc.*, 744 F.2d 1564, 1575 (Fed. Cir. 1984) (applying Seventh Circuit law to a disqualification order and finding that "[w]hen we review procedural matters that do not pertain to patent issues, we sit as if we were the particular regional circuit where appeals from the district court we are reviewing would normally lie").

"Discovery sanctions may only be imposed where a party displays willfulness, bad faith, or fault." *American Nat'l Bank & Trust Co. v. Equitable Life*, 406 F.3d 867, 877-78 (7th Cir. 2005) (quoting *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997)). "Discovery sanctions are reviewed for an abuse of discretion." *Id.* at 878; *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986) (holding that a district

court's decision on a contempt citation is reviewed for abuse of discretion or if the decision is clearly erroneous). While deferential, "this standard is not without teeth." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 737 (7th Cir. 1998). "A district court does not possess unfettered discretion to impose sanctions upon a recalcitrant party." *American Nat'l Bank*, 406 F.3d at 878 (quoting *In re Golant*, 239 F.3d 931, 937 (7th Cir. 2001)). Accordingly, the method for arriving at the sanction must be fair. *Id.* (citing *Salgado*, 150 F.3d at 740). Under the abuse of discretion standard, the Seventh Circuit will reverse a discovery sanction if its imposition "strikes us as fundamentally wrong or is clearly unreasonable, arbitrary, or fanciful." *Id.* (quoting *Maynard v. Nygren*, 372 F.3d 890, 893 (7th Cir. 2004) (internal quotations omitted)).

Moreover, the United States Supreme Court has said that civil contempt "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S.Ct. 1795, 1801-02 (2019) (emphasis in original) (quoting *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). "This standard reflects the fact that civil contempt is a severe remedy." *Id.* at 1802 (internal quotation omitted). Indeed, civil contempt may be improper if a party's attempt at compliance was "reasonable." *Id.* (citing 11A C. Wright A. Miller & M. Kane, Federal Practice and Procedure § 2960, pp. 430-431 (2013)). While the absence of willfulness does not relieve a party from civil contempt, a party's good faith, even where it does not bar civil contempt, may

help to determine an appropriate sanction. *Id.* (citing *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 801 (1987) ("[O]nly the least possible power adequate to the end proposed should be used in contempt cases" (quotation altered))).

## II. The district court erred in finding Appellants at fault and to have acted willfully and in bad faith when it found Appellants in contempt of court related to their disclosure of confidential documents to Mr. Hecht pursuant to the terms of the Protective Order.

The district court should not have found Appellants "at fault" for Mr. Hecht's use of Static Media's confidential information in the South Florida Action **nearly seven months after** Appellants disclosed the information to him pursuant to the terms of the Protective Order. Appx017. To obtain a civil contempt finding, Static Media must have presented clear and convincing evidence that "(1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)). To prove civil contempt with "clear and convincing evidence," Static Media must "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Von Gonten v. Research*

*Systems Corp.*, 739 F.2d 1264, 1268 (7th Cir. 1984) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

Appellants do not contest that the Protective Order contained "an unambiguous command" that "[a]ll Confidential information and documents, along with the information contained in the documents, shall be used solely for the purpose of this action." Appx043, ¶ 3; *see also* Appx015. With respect to the remaining three elements stated above, however, the record is devoid of any "clear and convincing evidence" supporting them.

With respect to elements (2), (3), and (4), there is no clear and convincing evidence (2) that Appellants violated the command to use the confidential information "solely for the purpose of this action," (3) any violation was significant, meaning the Appellants did not substantially comply with the order, or (4) that Appellants failed to make a reasonable and diligent effort to comply. In fact, the evidence is to the contrary. As Aldo Leopold famously said, "[e]thical behavior is doing the right thing when no one else is watching."[1] When no one else was watching Leader and its counsel, they had Mr. Hecht sign the Notice of Adherence to the Protective Order, wherein Mr. Hecht promised that he would not "use [confidential] information or documents except for purposes of *this action*."

[1] https://www.ethicssage.com/2018/10/ethics-is-about-what-you-do-when-no-one-is-looking.html (accessed November 15, 2021).

Appx098, ¶ 10; Appx106-107 (emphasis added). Appellants also reminded Mr. Hecht to comply with the Protective Order on both occasions when confidential information was sent to him. Appx115, Appx132, Appx130, ¶ 3. Moreover, there is no evidence – clear and convincing or otherwise – that Appellants knew that Mr. Hecht was going to use confidential information during his settlement discussions with Static Media's counsel that occurred nearly seven months after Appellants provided and Mr. Hecht received the information. To the contrary, the evidence of record is that Mr. Lee "had no reason to expect that OJ Commerce's counsel would use the information in violation of the PO, given that I had him sign the Acknowledgement and gave him repeated reminders about the PO." Appx130, ¶ 3. And Mr. Lee believed that Mr. Hecht would propound his own discovery to find out about the royalty information for purposes of the South Florida Action. Appx130-131, ¶ 4.

Indeed, based on the record evidence, it appears that Mr. Hecht's use of the confidential information was a spur-of-the-moment decision in reaction to Static Media "repl[ying] with an extremely high royalty demand" during the September 11, 2019 settlement conversation. Appx104, ¶ 16. Appellants cannot be held responsible for the actions of a third party, especially as the evidence shows that Mr. Lee made multiple "reasonable and diligent effort[s] to comply" with the Protective Order and to ensure Mr. Hecht complied too. *Hyatt*, 621 F.3d at 692; *Merchant &*

*Evans, Inc. v. Roosevelt Building Products, Co., Inc.*, Civ. A. No. 907973, 1991 WL 261654, at *2 (E.D. Pa. Dec. 6, 1991) (denying plaintiff's motion for civil contempt, holding "the defendant cannot be held in contempt for the actions of a third party").

Critically, Appellants' "behavior must be measured as of the date compliance was due,"[2] which, in this case, was when the disclosures to Mr. Hecht were made, on February 19 and 25, 2019. Appx098, ¶ 11; Appx132. As of those dates, Appellants had had Mr. Hecht sign[3] the Notice pursuant to the terms of the Protective Order (Appx044-045, ¶ 4(f)) and reminded him of his duty to comply with the Protective Order. Appx115, Appx132. There simply is no evidentiary basis to say that Appellants, on February 19 or 25, 2019, were at fault, or deliberately or intentionally violated the Protective Order, when they disclosed confidential information in compliance with that order's terms. Nor is there any evidence that Appellants knew that Mr. Hecht would use the confidential information in the South Florida Action **nearly seven months later**. *See* Appx130, ¶ 3.

Additionally, "'[w]illfulness' is defined as 'a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful.'" *U.S. v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986) (quoting *United States v. Baker*, 641 F.2d 1311, 1317 (9th Cir. 1981)). "It implies a 'deliberate or intended violation, as

---

[2] *Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 13 (N.D. Ill. 1986).

[3] Appx107 (signed on February 19, 2019, the date of the first disclosure of confidential information to Mr. Hecht).

distinguished from an accidental, inadvertent, or negligent violation of an order.'" *Id.* (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983)); *Hecht*, 111 F.R.D. at 10 (same). "Bad faith means dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud." *Boude v. City of Raymore*, 855 F.3d 930, 935 (8th Cir. 2017).

With these definitions in mind, the district court's finding that Appellants acted willfully and in bad faith is in no way supported by the record and is clearly erroneous. The same deficiencies are present for the district court's unsupported conclusions that Leader "act[ed] surreptitiously" and that Leader's counsel "had to know" that Mr. Hecht would use the confidential information in the South Florida Action nearly seven months later. As shown above, Appellants took all steps required by the Protective Order to ensure that Mr. Hecht would use the confidential information only for purposes of this case. And there is no evidence, let alone of a clear and convincing nature, that Appellants intended to violate the Protective Order themselves, or for Mr. Hecht to do so. To the contrary, the evidence of record shows that Appellants made reasonable and diligent efforts to comply with the Protective Order and to confirm that Mr. Hecht would do so too. *See* Appx098, ¶ 11; Appx106-107; Appx115; Appx130, ¶ 3; Appx132. Mr. Lee also testified that he believed that he had ethically complied with the terms of the Protective Order. Appx131, ¶ 7. At

the very least, "there is [a] *fair ground of doubt* as to the wrongfulness of the [Appellants'] conduct," which suggests that they should not have been held in contempt, let alone to have been found to have acted willfully or in bad faith. *Taggart*, 139 S.Ct. at 1801-02. The district court's findings that Appellants were at fault, were willful, and acted in bad faith are, therefore, fundamentally wrong and should be reversed. *American Nat'l Bank*, 406 F.3d at 878.

## III. The district court erred in awarding sanctions and attorneys' fees against Appellants based on the erroneous finding of contempt and because there was no evidence of Static Media's actual loss caused by Appellants' allegedly contemptuous action.

Because the district court erred in finding Appellants in contempt in the first place, it is axiomatic that there was no basis to award sanctions and attorneys' fees against them. *See Tripharma, LLC v. First Fruits Business Ministry*, SACV 12-404, 2013 WL 12131288, at *3 (C.D. Cal. Jan. 4, 2013) ("Because the Court makes no finding of contempt, the Court awards no sanctions."); *American Nat'l Bank*, 406 F.3d at 877-78 ("[d]iscovery sanctions may only be imposed where a party displays willfulness, bad faith, or fault"); *cf. Tranzact Tech., Inc. v. ISource Worldsite*, 406 F.3d 851, 856 (7th Cir. 2005) (a trial court may award attorneys' fees "upon a finding of civil contempt"). The district court's award of sanctions and attorneys' fees should be reversed.

Moreover, the district court's sanction of $1,000, proposed by Static Media, had no evidentiary basis in the record. Importantly, "[c]ivil contempt sanctions are

designed for the dual purpose of compelling compliance with a court order and compensating for losses caused by contemptuous actions." *Autotech Technologies LP v. Integral Research & Develop. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007) (quoting *Tranzact*, 406 F.3d at 856). The sanctions must relate to one of these two purposes:

> When the purpose of sanctions in a civil contempt proceeding is compensatory, **a fine, payable to the complainant, must be based on evidence of actual loss**. When the purpose is to make the defendant comply, the court must consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."[4]

*South Suburban Housing Center v. Berry*, 186 F.3d 851, 854 (7th Cir. 1999) (emphasis added) (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)). "The amount of the fine must be supported in the record." *Autotech*, 499 F.3d at 752; *Hecht*, 111 F.R.D. at 9 ("a compensatory fine for civil contempt requires proof of actual damages").

Neither Static Media nor the district court made any attempt to support the amount of the fine against Appellants with any record evidence. *See* Appx024-025. Nor did Static Media or the district court base the fine on any evidence of actual loss

[4] The district court did not base its sanction on "mak[ing] the defendant comply," and therefore that purpose is irrelevant here. Appx024-026.

to Static Media.[5] Even the district court noted that Mr. Hecht "would have been free to obtain the same confidential information legitimately as part of [the South Florida Action]," thus further undercutting any conclusion that Static Media was harmed or suffered any actual loss. Appx022 (citing Appx103, ¶ 13); *see also* Appx130-131, ¶ 4. Indeed, like in *Autotech*, "[n]owhere was there evidence of either the actual losses [Static Media] was suffering or what it might take to ensure [Appellants'] compliance." *Autotech*, 499 F.3d at 752. Likewise, it was an abuse of discretion to find Appellants in contempt and to assess a fine without any supporting evidence. *Id.*; *see also E.E.O.C. v. Dial Corp.*, No. 99C 3356, 2001 WL 1945089, at *6 (N.D. Ill. Dec. 6, 2001) (denying movant compensatory damages because "[t]here simply is no evidence" "that it has suffered any actual damages as a result of the disclosure"); *Hecht*, 111 F.R.D. at 14-15 (denying any award of money for contempt because "plaintiff presented no evidence that [it] suffered any damage" and "failed to show it suffered any harm to be compensated"). Accordingly, the district court's fine levied against Appellants should be reversed on that basis as well.

## CONCLUSION AND RELIEF SOUGHT

There was no clear and convincing evidence to support the district court's finding of contempt. To the contrary, the evidence of record supports the opposite

[5] Nor could Static Media have suffered any actual loss because Mr. Hecht only shared Static Media's confidential information with Static Media's counsel, **not** with his client OJ Commerce or any third party. Appx104, ¶¶ 16-17.

conclusion – that Appellants complied with the Protective Order and made reasonable and diligent efforts to do so. Appellants followed the procedures identified in the Protective Order prior to disclosing confidential information to Mr. Hecht and had no knowledge that Mr. Hecht would use the confidential information in settlement negotiations in the South Florida Action nearly seven months later. Nor was there any evidence that Static Media suffered any actual damages as a result of Appellants' disclosure to Mr. Hecht or his months-later disclosure of Static Media's confidential information to its own attorneys. Appellants respectfully request that this Court reverse the district court's finding of contempt of court against Appellants, reverse the sanctions and attorneys' fees awarded against Appellants, and grant Appellants such further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: January 18, 2022

By: /s/ Aaron W. Davis
Aaron W. Davis, Esq.
VALHALLA LEGAL, PLLC
P.O. Box 735
Custer, SD 57730-0735
Telephone: (763) 957-2397
Email: davis@valhallalegal.com

*Attorney for Appellants*
*Leader Accessories LLC and Jen-Feng Lee*

## CERTIFICATE OF COMPLIANCE

I certify that the size and style of type used in this brief is Times New Roman 14-point font and it contains 5,596 words, according to Microsoft Word, the word-processing system used to prepare this document. This certificate complies with the requirements of Federal Rules of Appellate Procedure 32(g)(1) and Fed. Cir. R. 32(b)(3).

By: /s/ Aaron W. Davis
Aaron W. Davis, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the ECF system and e-served on counsel of record noted below, this 18th day of January, 2022 in accordance with Fed. R. App. P. 25(d)(1)(B) and Fed. Cir. R. 25(e).

By: /s/ Aaron W. Davis
Aaron W. Davis, Esq.

**COUNSEL OF RECORD**

Deborah C. Meiners, Esq.
Harry E. Van Camp, Esq.
Elijah B. Van Camp, Esq.
DeWitt LLP
2 E. Mifflin Street, Suite 600
Madison, WI 53703
Email: dcm@dewittllp.com; hvc@dewittllp.com; evc@dewittllp.com

*Counsel for Appellee Static Media LLC*

# ADDENDUM

| DE # | Description of the Document | Appx #s |
|---|---|---|
| 65 | Order dated 12-27-2019 | Appx011-018 |
| 71 | Opinion and Order dated 01-05-2021 | Appx019-023 |
| 77 | Order dated 06-17-2021 | Appx024-026 |
| 81 | Text Only Order dated 07-01-2021 | Appx027 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STATIC MEDIA LLC,

Plaintiff, 18-cv-330-wmc

v.

LEADER ACCESSORIES LLC,

Defendant.

On August 30, 2019, Judge Conley entered judgment in favor of defendant Leader Accessories LLC in this patent infringement case. Dkt. 53. On October 18, 2019, plaintiff Static Media LLC filed a motion for sanctions, contending that Leader disclosed confidential information from this case to a defendant in another lawsuit brought by Static Media, in violation of the protective order agreed to by the parties and entered by the court. Dkt. 58. For the reasons below, I am granting the motion to the extent that I find Leader and its attorneys in contempt of court for violating the protective order. I will stay ruling on Static Media's request for fines, attorneys fees, and costs until I obtain more information from the parties.

**BACKGROUND**

On September 14, 2018, Static Media and Leader filed a joint motion for a stipulated protective order, in which they agreed to designate certain documents and information produced in this case as "Confidential" or "Highly Confidential – Trial Counsels' Eyes Only" information. Dkt. 13. I entered the protective order on the same day. Dkt. 14.

Paragraph 3 of the protective order provides that all confidential information designated under the order

> shall be used solely for the purpose of this action and no person receiving such information or documents shall, directly or indirectly, transfer, disclose

Case: 21-2033 Document: 25 Page: 36 Filed: 01/18/2022

> or communicate in any way the information or the contents of the documents to any person other than those specified in paragraph 4.

Paragraphs 4(f) and 5 specify that the following persons, among others, may access Confidential and Highly Confidential – Trial Counsels' Eyes Only information:

> outside independent persons (i.e., persons not currently or formerly employed by, consulting with or otherwise associated with any party) who are retained by a party or its attorneys to furnish consulting, technical or expert services and/or to give testimony in this action and have executed a 'Written Assurance.'

Finally, paragraph 16 states that the protective order remains in effect after the final action, and the court retains jurisdiction over the parties for purposes of enforcing the order.

Static Media's counsel designated as Confidential or Highly Confidential certain testimony and exhibits from the January 24, 2019 deposition of Gary M. Glazer and from the January 24, 2019 deposition of Anthony DoVale, Jr. *See* dkts. 21-22 (marked confidential and filed under seal). In particular, Static Media's designations included testimony related to the November 11, 2015 licensing and royalty agreement between it and Belnick, Inc., and Static Media's sales and revenue information. Although Static Media agreed to remove the confidentiality designations for a handful of pages from the two deposition transcripts in conjunction with the parties' briefing of Leader's motion for summary judgment, it did not remove any other designations in those transcripts and it did not allow Leader to share the information with a third party. *See* dkt. 59 at ¶¶ 3, 5. Leader has never requested that Static Media change the designation of any information or document in either the Glazer or DoVale depositions pursuant to paragraph 12 of the protective order. *Id.* at ¶ 4.

Meanwhile, in October 2018, DoVale—the inventor of the D400 patent at issue in this case— sent a letter to OJ Commerce, LLC, alleging infringement of Static Media's D400 patent. In November or December 2018, OJ Commerce's lead counsel, Shlomo Y. Hecht, contacted

Leader's attorney, Jen-Feng Lee, about the Wisconsin action regarding the same patent. *See* dkt. 63. Given the likelihood that Static Media would file suit against OJ Commerce, Leader and OJ Commerce decided to form a joint defense group (JDG). According to Hecht, JDG counsel work like a group of mutually retained outside counsel for the purpose of common defense by discussing and consulting with one another to promote a joint interest.

On January 30, 2019, Attorney Susan Warner filed a patent infringement complaint on behalf of Static Media against OJ Commerce in the Southern District of Florida, Case No. 19-cv-60270. To formalize their earlier discussions, OJ Commerce and Leader executed a joint defense agreement (JDA) on February 15, 2019. Four days later, Hecht signed a Notice of Adherence to the Protective Order issued in the Wisconsin case. It was Hecht's understanding that JDG counsel are obligated to protect all shared confidential information and documents. Lee then provided Hecht with copies of the confidential deposition transcripts and the 2015 royalty agreement and payment information for Static Media's D400 patent. In addition, Lee admits that two days before the JDA was executed, he provided OJ Commerce's expert witness, Ronald Kemnitzer, with copies of the confidential deposition transcripts, but only after Kemnitzer signed a notice of adherence to the protective order. (Kemnitzer later provided an expert opinion on infringement and invalidity of the D400 patent in support of Leader's motion for summary judgment in this case.)

On June 14, 2019, the Southern District of Florida issued an order to stay all proceedings in the suit against OJ Commerce, pending the outcome of the Wisconsin action. In September 2019, Static Media and OJ Commerce entered settlement negotiations. During a telephone call on September 26, Hecht told Warner about the JDA and his receipt of the discovery materials from the Wisconsin case, including the Glazer and DoVale deposition transcripts and exhibits, the 2015

licensing and royalty agreement, and the amount of the royalty paid to Static Media under that agreement. According to Hecht, Static Media made what he considered to be "an extremely high royalty demand" in light of the royalty agreement disclosed in the Wisconsin action.

**ANALYSIS**

Static Media asks that the court find Leader and its counsel in contempt of the protective order and provide the following relief:

- Require Leader and its counsel to identify and produce to Static Media all of their communications with OJ Commerce and its counsel related to this case, along with a specific accounting of each disclosure of information designated confidential or highly confidential.

- Fine Leader and its counsel, jointly and severally, $1,000 for each violation of the protective order. *See Frazier*, 2005 WL 372253, at *4 (imposing $1,000 fine jointly and severally on plaintiffs and their counsel for each violation of protective order).

- Award Static Media reasonable attorneys' fees and costs for the filing of its motion.

Leader opposes the motion, arguing that Hecht was allowed access to confidential and highly confidential documents because he was providing consulting services as part of the company's joint defense agreement with OJ Commerce and agreed to comply with the protective order in this case. Alternatively, Leader points out that no harm resulted from the disclosure because the 2015 licensing agreement would have been produced during discovery in the Florida case had the stay been lifted.

As this court has made clear, a protective order is not a "paper tiger" and will be enforced in accordance with Fed. R. Civ. P. 37(b)(2), which allows for the imposition of sanctions for a party's failure to obey a discovery order. *Frazier v. Layne Christensen Co.*, No. 04-C-315-C, 2005 WL

372253, at *4 (W.D. Wis. Feb. 11, 2005). *See also Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, 2009 WL 10695131, at *3 (N.D. Cal. Jan. 29, 2009) (applying Rule 37 to protective orders). Sanctions may include "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A)(vii); *GQ Sand, LLC v. Range Mgmt. Sys., LLC*, 278 F. Supp. 3d 1115, 1123 (W.D. Wis. 2017) (holding defense attorneys in civil contempt for violating protective order by using confidential materials for a purpose unrelated to the lawsuit). In addition, Rule 37(b)(2)(C) requires that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

The Court of Appeals for the Seventh Circuit has explained that "[a] court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 737-38 (7th Cir. 1999) (internal citations omitted). In addition, civil contempt sanctions serve the remedial purpose of compensating the complainant for losses sustained as a result of the misconduct. *Id.* In order to impose sanctions, a district court must point to a "specific decree" that sets forth an "unequivocal command," *id.*, and find that the party in contempt "displayed willfulness, bad faith, or fault" in violating it, *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778 (7th Cir. 2013) (quoting *Am. Nat'l Bank & Trust Co. of Chi. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 877 (7th Cir. 2005)).

Here, paragraph 3 of the protective order unequivocally states that all confidential information "shall be used solely for the purpose of *this* action," and that disclosures are limited to those persons identified in paragraph 4. Paragraph 4(f) and 5 discuss the release of information to outside consultants and experts, but those provisions also make clear that any such services must

be furnished "in this action." Although Leader suggests that Hecht provided consulting services for the purposes of this case, much like expert witness Kemnitzer, it provides scant detail about the nature of the JDG or the exact nature of Hecht's services. In his declaration, Attorney Lee generally describes Hecht's consultation as "comprehensive, encompassing infringement, invalidity, damages, and additional and assertable potential defenses." Dkt. 62 at ¶ 15. However, Hecht himself admits that he used the confidential information he received from Leader to bolster OJ Commerce's defense in the Florida litigation, and he made those intentions clear to Leader's counsel before entering the JDA.

As Static Media points out, the "joint defense" or "common interest" doctrine on which Leader relies "is an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person" and "extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). *See also Integra Bank Corp. v. Fid. & Deposit Co. of Maryland*, 2014 WL 116292, at *4 (S.D. Ind. Jan. 10, 2014) (quoting same and holding "joint defense privilege . . . applies when a non-party sharing the client's interest is a party to a confidential communication between an attorney and client"). The confidential depositions, exhibits, and licensing agreement filed by Static Media in this court are not Leader's attorney-client communications or work product and cannot be protected under the JDA between Leader and OJ Commerce under any conceivable interpretation of the common interest or joint defense doctrine. These documents were designated as confidential or highly confidential by Static Media and filed under seal in this case. Moreover, the JDA is a private contract between Leader and OJ Commerce, and its terms cannot supersede, modify, or amend the protective order entered in this case. It is illogical, unreasonable and self-serving for Leader to contend that it can unilaterally disclose Static

Media's confidential information from this case to a third party so long as Leader agrees to do so under the terms of a JDA.

Leader contends that even if its disclosures were inappropriate, no harm befell Static media because OJ Commerce would have asked for and received the 2015 licensing agreement during discovery in the Florida case if the stay had been lifted. I disagree. OJ Commerce received Static Media's confidential information during settlement negotiations while the stay was ongoing and it used this information against Static Media to gain a tactical advantage during the negotiations.

This is not a close call. Leader was at fault and it acted willfully and in bad faith by disclosing confidential and highly confidential information to third parties in violation of the protective order entered by the court on September 14, 2018. Accordingly, I find Leader and its attorneys in contempt of court and will assess a fine and cost shifting pursuant to Rule 37(b)(2)[c] as relief.

The court needs more information in order to determine the appropriate amount of fines, fees, and costs. Toward this end, Leader must provide to Static Media a specific accounting of each disclosure of information designated confidential or highly confidential. After receiving this information, Static Media may submit to the court a proposed fine for the identified disclosures, an itemized bill of its fees and costs for the preparation of the motion for sanctions, and a brief supporting argument. Leader will be given an opportunity to respond as it sees fit.

**ORDER**

IT IS ORDERED that:

(1) Plaintiff Static Media LLC's motion for sanctions, dkt. 58, is GRANTED to the extent that defendant Leader Accessories LLC and its counsel are found to be in contempt of court for violation of the protective order.

(2) The motion is STAYED in all other respects, pending the following briefing to be submitted by the parties:

(a) Not later than January 10, 2020, defendant and its attorneys shall identify and produce to plaintiff all of their communications with OJ Commerce and its counsel related to this case, along with a specific accounting of each disclosure of information designated confidential or highly confidential.

(b) Not later than January 24, 2020, plaintiff may submit a proposed fine for the identified disclosures, an itemized bill of fees and costs for the preparation of the motion for sanctions, and a brief supporting argument. Defendant will have until February 3, 2020 to respond.

Entered this 24th day of December, 2019.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STATIC MEDIA LLC,

Plaintiff,

v.

OPINION AND ORDER

18-cv-330-wmc

LEADER ACCESSORIES LLC,

Defendant.

---

In this patent infringement action, the court previously granted summary judgment to defendant Leader Accessories, LLC, finding that a reasonable jury could not conclude that its stadium seat infringed the design patent in suit. (8/30/19 Op. & Order (dkt. #52); Judgment (dkt. #53).) Approximately six weeks later, plaintiff Static Media LLC filed a motion for sanctions under Federal Rule of Civil Procedure 37 on the basis that Leader and its counsel disclosed Static Media's confidential information in violation of the protective order previously entered in this case. (Mot. for Sanctions (dkt. #58).) In particular, plaintiff claims wrongful disclosure of this confidential information to an attorney representing a different company, OJ Commerce, that faces a claim for infringement of the same design patent at issue in this case.

Because Magistrate Judge Crocker had entered the protective order in this case, he resolved the motion, granting it in part and staying all other aspects. (12/27/19 Order (dkt. #65).) More specifically, after finding that certain confidential information was disclosed in violation of the protective order's express requirement that it "shall be used solely for the purpose of *this* action," Judge Crocker concluded that Leader and its attorneys acted in contempt of court and, therefore, determined that entry of a fine and cost-shifting

was appropriate under Rule 37(b)(2). (*Id.* at 5, 7.) However, the court ordered the parties to submit additional information to craft an appropriate sanction, thus staying that part of the motion.

In response, invoking Federal Rule of Civil Procedure 72(a), Leader appealed Judge Crocker's decision to me as the presiding judge in this case.[1] (Dkt. #66.) For the reasons that follow, the court agrees with Judge Crocker that this is not a close case, affirms the order granting the motion for sanctions and directs the parties to file the additional submissions set forth in Judge Crocker's order so that he may determine an appropriate sanction.

## OPINION

On appeal, defendant contends that Judge Crocker erred in finding a violation of the protective order because it followed the two-prong process identified in the protective order for providing access to confidential information by: (1) entering into a "Joint Defense Agreement" or "JDA" with OJ Commerce who was also defending against Static Media's patent infringement claims; and (2) having OJ Commerce's "contractually retained outside counsel" sign a "written assurance" of compliance with the protective order in this case. (Def.'s Appeal (dkt. #66).)

However, this argument fails to address the reason that Judge Crocker found a violation of the protective order. Paragraph 3 of the protective order states that all confidential information designated under the order

[1] Leader also sought to stay the additional briefing to determine an appropriate sanction, which Judge Crocker granted. (Dkt. ##67, 68.)

> *shall be used solely for the purpose of this action* and no person receiving such information or documents shall, directly or indirectly, transfer, disclose or communicate in any way the information or the contents of the documents to any person other than those specified in paragraph 4.

(Stip. Protective Order (dkt. #13-1) p.2, ¶ 3 (emphasis added); Order (dkt. #14).) Contrary to defendant's argument, paragraphs 4(f) and 5 only contemplate disclosure of confidential information to outside consultants and experts they use "solely for the purposes of this action." (*Id.*)

Defendant has not argued, nor can it argue based on the undisputed facts, that it disclosed any of the information designated by plaintiff as "confidential" under this court's order to OJ Commerce and its counsel for use in *this* lawsuit alone. Instead, in its appeal, defendant's counsel simply states that "its defense counsel (Lee) did NOT 'use any confidential materials for purpose unrelated to this lawsuit', but instead used (the confidential information) 'solely for the prosecution or defense of this Action." (Def.'s Appeal (dkt. #66) 4.) The material question, however, is whether defendant's counsel provided the confidential information to OJ Commerce and its counsel "*solely* for purpose of *this* action." The obvious answer is a resounding "no," since whatever arguable role they may have played in assisting defendant as a so-called 4(f) "consultant," defendant's counsel had to know that OJ Commerce's and its counsel's *principal* use of the information would be in defending against the separate lawsuit brought against it. Defendant presents nothing to the contrary in its submissions to this court. In other words, regardless of whether defendant "strictly followed the two-prong process" for making such a disclosure, the

disclosure itself was not permitted under the express terms of the parties' stipulated protective order.

Had this been the intent of defendant, its choice was to incorporate this use into the express terms of the protective order, make plaintiff aware of the JDA and seek consent to disclose, or come back to this court for relief. Alternatively, defendant could have shared its discovery requests with OJ Commerce's counsel, who would have been free to obtain the same confidential information legitimately as part of that lawsuit, as he notes. (Dkt. #63, ¶ 13.) Instead, defendant chose to act surreptitiously, as did OJ Commerce's counsel by springing this confidential knowledge on plaintiff during royalty discussions. (*Id.* ¶ 16.) As such, defendant's counsel acted in violation of this court's protective order and facilitated a third-party's counsel. As Judge Crocker found, this is sanctionable misconduct.

ORDER

IT IS ORDERED that:

1) Defendant Leader Accessories LLC's appeal of Magistrate Judge Decision (dkt. #66) is DENIED. Judge Crocker's decision granting in part plaintiff's motion for sanctions (dkt. #65) is AFFIRMED.

2) Consistent with Judge Crocker's prior order, the court sets the following briefing schedule:

   a) No later than January 19, 2021, defendant and its attorneys shall identify and produce to plaintiff all of their communications with OJ Commerce and its counsel related to this case, along with a specific accounting of each disclosure of information designated confidential or highly confidential.

   b) No later than February 2, 2021, plaintiff may submit a proposed fine for the identified disclosures, an itemized bill of fees and costs for the preparation of the motion for sanctions, and a brief supporting argument.

c) Defendant will have until February 9, 2021, to respond

Entered this 5th day of January, 2021.

BY THE COURT:

/s/
________________________
WILLIAM M. CONLEY
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STATIC MEDIA LLC,

Plaintiff, 18-cv-330-wmc

v.

LEADER ACCESSORIES LLC,

Defendant.

---

On January 5, 2021, Judge Conley entered an order (dkt. 71) upholding my December 24, 2020 order (dkt. 65) granting plaintiff's motion for sanctions (dkt. 58). Plaintiff timely submitted its proposed fine and bill of costs (dkts. 72 & 73), to which defendant timely responded (dkts. 74 & 75), followed by a March 16, 2021 notice of supplemental authority by defendant (dkt. 76).

Plaintiff has asked for a $1000 sanction for each of what it characterizes as two violations, plus reimbursement of $10,586.30 in attorneys fees representing 28.2 hours of work by three attorneys at an average rate of about $375/hr. Defendant argues against awarding any sanction at all, characterizing any violation as inadvertent and harmless. Indeed, defendant continues to imply that there *were* no genuine violations of the protective order, despite two judges in this court finding otherwise and deeming defendant's actions to be sanctionable misconduct. Because this seems to be nagging at defendant, let's be clear: *scienter* is not required for the court to find a violation of the protective order and impose a sanction. Defendant's intent is irrelevant to finding a violation, although it could be relevant to the resulting penalty.

But we don't need to explore this further because plaintiff has requested only $1000 per violation. That's an eminently reasonable number under the totality of circumstances as they are viewed by the court. Frankly, I had a higher number in mind, but I'm going with plaintiff's

lower request. In a patent lawsuit, a sanction of one thousand dollars could be viewed as merely symbolic, but the message sent is important: when you sign a protective order, you had better understand what you have agreed to and then you had better comply with the terms of your agreement. Even unintended violations can cause the harm that the agreement was designed to prevent.

Plaintiff alleges two violations based on two emails sent as part of one email string. Defendant responds that this should be viewed as one violation because the emails were part of one communication that had to be split in half due to the size of the attachment. I'm going with defendant on this one. The violation of the protective order was one discrete act that by technical happenstance resulted in two emails. So, the court is imposing a $1000 sanction.

As for attorneys' fees, the amount requested by plaintiff is reasonable. The amount of time that plaintiff's attorneys spent on this issue was not excessive; indeed, much of it was necessitated by defendant's appeal of the original sanction order, and plaintiff prevailed completely at both levels. The hourly rates charged are at or below the average in patent lawsuits litigated in this court. Defendant's dissection of plaintiff's bill is unpersuasive. Mundane discovery disputes in commercial litigation routinely result in 20 to 30 hours of time spent and five-figure cost-shifting under Rule 37(a)(5), so a $10,000 request in this situation is unremarkable Having carefully considered all of defendant's arguments in opposition to plaintiff's request, I conclude that plaintiff is entitled to the amount requested, although I am rounding it down to an even $10K. Perhaps this number will go up if defendant appeals *this* order and loses, but I'm not going to look for trouble.

ORDER

It is ORDERED that defendant Leader Accessories LLC and its counsel must pay $1000 in sanctions to plaintiff Static Media LLC and must pay $10,000 in attorneys' fees to Static Media's attorneys not later than July 19, 2021.

Entered this 17th day of June 2021.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

| | | |
|---|---|---|
| 07/01/2021 | 81 | ** TEXT ONLY ORDER ** The court is in receipt of defendant Leader Accessories LLC's Rule 72(a) objection to Magistrate Judge Crocker's June 17, 2021, order awarding sanctions and attorneys' fees. (Dkt. # 79 .) The court previously affirmed Judge Crocker's decision to sanction defendant and its counsel (dkt. # 71 ); the most recent decision by Judge Crocker simply set the amount of sanctions and attorneys' fees. Defendant explains that its most recent objection is solely interposed to preserve its appeal rights as to whether Judge Crocker and this court erred in determining that a sanction was appropriate in the first place. Accordingly, defendant requests that the court "simply overrule Leader's objection as to the amount of the sanction without the need for further briefing and Leader can then pursue its right of appeal." (Dkt. # 79 at 2.) While questioning whether this is necessary, the court also recognizes that the arguable need for "belt and suspenders" is a much easier call to make from this side of the bench and, therefore, DENIES defendant's latest appeal (dkt. # 79 ) and AFFIRMS Judge Crocker's decision awarding sanctions. In light of Judge Crocker's entry of a stay of the deadline for payment pending a decision on defendant's appeal (dkt. # 80 ), the court also resets the deadline for payment to July 26, 2021. Signed by District Judge William M. Conley on 7/1/2021. (kwf) (Entered: 07/01/2021) |