# United States Court of Appeals for the Federal Circuit

---

**STATIC MEDIA LLC,**
*Plaintiff-Appellee*

**v.**

**LEADER ACCESSORIES LLC,**
*Defendant-Appellant*

**JEN-FENG LEE,**
*Appellant*

---

2021-2303

---

Appeal from the United States District Court for the Western District of Wisconsin in No. 3:18-cv-00330-wmc, Judge William M. Conley.

---

Decided: June 28, 2022

---

DEBORAH CAROL MEINERS, DeWitt Ross & Stevens S.C., Madison, WI, argued for plaintiff-appellee. Also represented by ELIJAH B. VAN CAMP, HARRY E. VAN CAMP.

AARON WAYNE DAVIS, Valhalla Legal, PLLC, Custer, SD, argued for appellants.

---

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* REYNA.

DYK, *Circuit Judge*.

Leader Accessories LLC appeals a decision of the District Court for the Western District of Wisconsin. The district court held Leader and its attorney, Jen-Feng Lee, in contempt for allegedly violating a protective order by disclosing confidential documents and awarded Static Media LLC sanctions and attorney's fees. We hold that the disclosure was not a clear violation of the protective order and accordingly reverse the district court's contempt finding and its award of sanctions and attorney's fees.

## BACKGROUND

Static Media LLC ("Static") sued Leader Accessories LLC ("Leader") in May 2018 ("the Wisconsin action") for infringing its D771,400 design patent ("D400 patent"). The merits of the case were resolved when the district court granted Leader's motion for summary judgement of non-infringement, and this appeal presents no issue related to that decision. Rather, this appeal concerns an alleged violation of a protective order issued by the district court.

In September 2018, the parties entered into the protective order, approved by the court, under which they could designate certain documents and information produced during discovery as "Confidential" or "Highly Confidential." The protective order's purpose was to mitigate the risk of "injury or damage" and "competitive disadvantage[s]" posed by "public dissemination and disclosure of" the confidential information. J.A. 42. To that end, confidential documents were subject to the following restrictions:

> 3. All Confidential information and documents, along with the information contained in the documents, *shall be used solely for the purpose of this*

> *action* and *no person receiving such information or documents shall*, directly or indirectly, *transfer, disclose or communicate in any way the information or the contents of the documents to any person other than those specified in paragraph 4.*

J.A. 43 (emphasis added). Paragraph 4 allowed the parties to disclose confidential-designated documents to a limited group of people, including:

> 4. Access to any Confidential information or document shall be limited to:
>
> . . .
>
> f. *outside independent persons* (i.e., persons not currently or formerly employed by, consulting with or otherwise associated with any party) who are *retained by a party or its attorneys to furnish consulting, technical or expert services and/or to give testimony in this action and have executed the "Written Assurance" as specified below.*

J.A. 44 (emphasis added). Thus, outside independent persons retained to furnish consulting, technical, or expert services in the Wisconsin action were also independently bound by the terms of the protective order because they were obligated to sign a separate "Written Assurance" before receiving any confidential information:

> 7. Before any person designated in 4(f) is given access to Confidential or Highly Confidential – Trial Counsels' Eyes Only information, *the individual shall first read this Order* and, as is appropriate under the circumstances, *either execute a "Written Assurance" in the form attached hereto as Exhibit A*, acknowledge on the record that he or she has read and agrees to be bound by the terms of the Order and the jurisdiction of this Court for the sole purpose of enforcing same, or otherwise agree in writing to be bound by the terms of this Order and

> to submit to the jurisdiction of this Court for the sole purpose of enforcing this Order.

J.A. 45 (emphasis added). The Written Assurance restricted independent consultants' use of confidential information:

> I shall not divulge any information or documents or copies of documents designated Confidential or Highly Confidential – Trial Counsels' Eyes Only obtained pursuant to such Protective Order or the contents of such documents to any person other than those specifically authorized by the Protective Order. *I shall not copy or use such information or documents except for the purposes of this action and pursuant to the terms of the Protective Order.*

J.A. 50–51 (emphasis added).

Shortly after Static and Leader agreed to this protective order in the Wisconsin action, Static sent a cease-and-desist letter to another party, OJ Commerce, also alleging infringement of the D400 patent. Upon receipt of the letter, OJ Commerce's attorney, Sam Hecht, contacted Leader's attorney, Mr. Lee, and the parties decided to enter into a Joint Defense Group ("JDG") to be governed by a Joint Defense Agreement ("JDA"). Such an agreement is a useful tool to protect the confidentiality of communications between parties "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997) (quoting *United States v. Schwimmer*, 892 F.3d 237, 243 (2d Cir. 1989)). Both attorneys testified that they understood the JDG to be "for the purpose of common defense . . . to promote the joint interest." J.A. 96; J.A. 103.

Thereafter, Static sued OJ Commerce for patent infringement in United States District Court for the Southern District of Florida on January 30, 2019, ("the Florida

action") and the parties executed the JDA. Mr. Lee then sent Mr. Hecht copies of the protective order and Written Assurance form from the Wisconsin action. Four days after signing the JDA, Mr. Hecht signed and returned the Written Assurance to Mr. Lee. Shortly thereafter, Mr. Lee emailed Mr. Hecht two deposition transcripts and related exhibits from the Wisconsin action, including Static's licensing and royalty agreements and sales and revenue information. Only a few of the pages in those documents were marked confidential pursuant to the protective order. The rest were not.

In both of Mr. Lee's email disclosures to Mr. Hecht, he asked him to "note the protective order re Confidential AEO designation" and reminded him to "please adhere to the protective order." J.A. 132. Mr. Lee later testified that he sent the documents to Mr. Hecht for the purpose of "more effective joint defense consultation and discussion," including "discussion and consultation" regarding Leader's April 2019 motion for summary judgment in the Wisconsin action. J.A. 98. Mr. Lee described "the consultation with [Mr.] Hecht" as "more comprehensive" than Mr. Lee's consultation with other experts, "encompassing infringement, invalidity, damages, and additional and assertable potential defenses." J.A. 99.

Several months later, in September 2019 settlement negotiations between Static and OJ Commerce in the Florida action, Mr. Hecht improperly used the royalty agreements he obtained from Mr. Lee to assess a settlement proposal from Static. Mr. Hecht revealed to Static's counsel, attorney Susan Warner, who was not counsel in the Wisconsin action nor a claimed signatory to the protective order, that OJ Commerce "ha[d] a JDA with counsel [for Leader]" which is why he was "fully aware about the actual royalties [Static had] received." J.A. 104. In describing this incident, Mr. Lee testified that he had "no reason to expect that [Mr. Hecht] would use the information in

violation of the [protective order], given that [he] had [Mr. Hecht] sign the Acknowledgement and gave [Mr. Hecht] repeated reminders about the [protective order]." J.A. 130.

As a result of Mr. Hecht's actions, Static moved for discovery sanctions and an order holding Leader and its counsel in civil contempt, alleging that Mr. Lee violated the protective order by disclosing the confidential documents to Mr. Hecht. A magistrate judge found Leader and Mr. Lee in civil contempt for violating the protective order. The district court affirmed.

Following the district court's affirmance, the magistrate judge ordered Leader to pay Static's attorney's fees and to pay Static a $1,000 sanction. The district court again affirmed. Leader and its counsel appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's "decision to sanction and the choice of an appropriate sanction" under an abuse of discretion standard. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 670 (7th Cir. 1996).

Federal Rule of Civil Procedure 37 permits district courts to "treat[] as contempt of court the failure to obey any [court] order." Fed. R. Civ. P. 37(b)(2)(A)(vii). A contempt finding requires the moving party to "establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *SEC v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010) (citing *Prima Tek II, LLC v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533, 542 (7th Cir. 2008)). As we discuss below, the Supreme Court has recently clarified that a district court's finding of

contempt is improper when there "is [a] fair ground of doubt as to the wrongfulness of the [contemnor's] conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019) (quoting *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)).

I

Both the district court and magistrate judge's decisions here appear to rest on two separate theories. We first address the district court's theory that Leader and Mr. Lee should be held in contempt because Mr. Lee was responsible for Mr. Hecht's improper use of the confidential information in the Florida action. The magistrate judge based its contempt finding on the fact that Mr. Lee knew or should have known that Mr. Hecht would use the confidential information for improper purposes. Its initial contempt order stated, without citing evidentiary support, that Mr. Hecht "made [his] intention[]" to "use[] the confidential information he received from Leader to bolster OJ Commerce's defense in the Florida litigation" "clear to Leader's counsel before entering the JDA." J.A. 16. It was on this basis that the magistrate judge concluded it was "illogical, unreasonable and self-serving for Leader to contend that it [could] unilaterally disclose Static Media's confidential information from this case to a third party," and that in doing so, Leader "was at fault and . . . acted willfully and in bad faith." J.A. 16–17. When the district court affirmed the contempt finding, it did so in part because Leader and its counsel "had to know that OJ Commerce's and its counsel's principal use of the information would be in defending against the [Florida action]." J.A. 21.

Leader argues that the district court abused its discretion because Static did not prove by clear and convincing evidence that Mr. Lee's disclosure to Mr. Hecht violated the protective order. It relies on the fact that Mr. Lee did not disclose any confidential documents to Mr. Hecht until

after Mr. Hecht had signed the Written Assurance, under which he promised not to "use [the confidential] information or documents except for purposes of [the Wisconsin] action." Appellant's Br. 18–19 (citing J.A. 98; 106–07). Leader also notes that Mr. Lee reminded Mr. Hecht of the protective order's obligations each time he disclosed confidential information to Mr. Hecht. Finally, Leader argues that there was "no evidence" to support the district court's conclusion that Mr. Lee "knew that Mr. Hecht was going to use [the] confidential information in [the Florida action]," given Mr. Lee's testimony that he had "no reason to expect that OJ Commerce's counsel would use the information in violation of the [protective order]." *Id.* at 19 (citing J.A. 130).

We agree that Static failed to prove by clear and convincing evidence that Leader violated the protective order in this respect. There is no clear and convincing evidentiary support for the magistrate judge's and the district court's respective conclusions that Mr. Lee knew or should have known Mr. Hecht would use the confidential information in the Florida action. Before disclosing the deposition transcripts to Mr. Hecht, Mr. Lee did exactly what was required to ensure that Mr. Hecht would abide by the protective order. Mr. Lee had Mr. Hecht sign the Written Assurance, and with each disclosure, Mr. Lee reminded Mr. Hecht of the obligations the protective order imposed on his use of the confidential information. There is similarly no sufficient basis for finding that Mr. Lee should have known that Mr. Hecht would independently decide to violate the protective order. In these circumstances, all that remains regarding the first theory of contempt is the fact that Mr. Hecht made an improper disclosure in the Florida action, but Static conceded at oral argument that it would be erroneous for the district court to hold Leader and Mr. Lee in contempt for Mr. Hecht's disclosure. The district court's

first basis for finding contempt therefore was an abuse of discretion.

## II

The second basis relied on by the district court, and defended on appeal by Static, was that Mr. Lee's disclosure to develop a joint defense strategy itself constituted an impermissible use of the confidential information not "solely" for the purpose of the Wisconsin action. The magistrate judge noted that Leader "provide[d] scant detail about the nature of the JDG or the exact nature of Hecht's services," and concluded that the JDA, "a private contract between Leader and OJ Commerce," could not "supersede, modify, or amend the protective order entered in this case." J.A. 16. The district court agreed, dismissing "whatever arguable role [Mr. Hecht] may have played in assisting [Leader] as a so-called 4(f) 'consultant,'" before concluding that Mr. Lee's disclosure violated the protective order's use restrictions. J.A. 21.

Leader claims that Mr. Lee's disclosure was permitted by paragraph 4(f) of the protective order because Mr. Hecht was a contractual consulting attorney hired to "discuss[] various aspects of the defenses, including issues of retaining/sharing experts, damages evaluation, invalidity and non-infringement arguments in Leader's motion for summary judgment filing, overall joint defense strategies, etc." Appellant's Br. 8. But Static contends that the disclosure of the information to Mr. Hecht was not "solely for the purpose of [the Wisconsin action]" because it was to be used for developing a joint defense strategy for both actions. J.A. 43. Static characterizes Mr. Lee's testimony that he shared "the deposition transcripts . . . for more effective joint defense consultation and discussion," including "various aspects of the defenses, including . . . overall joint defense strategies, etc.," as an "admi[ssion] that [he] disclosed the confidential information for a purpose other than the

defense of the [Wisconsin] action alone." Appellee's Br. 10–11 (quoting J.A. 98). Thus, according to Static, Mr. Lee's use of the information for joint defense purposes was impermissible.

Because contempt is a "severe remedy," the Supreme Court has recently instructed that courts should not "resort[] to [it] where there is [a] fair ground of doubt as to the wrongfulness of the [contemnor's] conduct." *Taggart*, 139 S. Ct. at 1801–02 (quoting *Cal. Artificial Stone*, 113 U.S. at 618). "Under the fair ground of doubt standard, civil contempt . . . may be appropriate when the [contemnor] violates a [protective] order based on an objectively unreasonable understanding of the . . . order or the statutes that govern its scope." *Id.* at 1802. The question, then, is whether it was objectively unreasonable to conclude that Mr. Lee's use of the information for joint defense purposes was permitted by the protective order.

The alleged violation of the protective order turns on the meaning of the term "use" and whether it extends to a disclosure to parties bound by the protective order. When the Supreme Court was similarly tasked with interpreting "use" in a criminal statute, it instructed that the term "use" "c[ould not] be interpreted apart from context," and should instead be "analyzed in light of the terms that surround it." *Smith v. United States*, 508 U.S. 223, 229 (1993); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he context in which a term is used in the asserted claim can be highly instructive."). Other circuits have followed this instruction when interpreting "use" in protective orders. The Ninth Circuit held that a protective order must be interpreted "to comply with common sense" and in a manner that "connect[s] its prohibitions to its purpose." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

We conclude that it was improper to hold Leader and Mr. Lee in contempt because, when read in context, there is a fair ground of doubt as to whether the protective order barred Mr. Lee's disclosure to develop a joint defense strategy. Looking to the order's stated purpose, its goal is preventing the public dissemination and disclosure of sensitive information:

> The parties and non-parties to this litigation may assert that public dissemination and disclosure of Confidential or Highly Confidential – Trial Counsels' Eyes Only information could cause injury or damage to the party or non-party disclosing or producing the information, and could place that party or non-party at a competitive disadvantage[.]

J.A. 42.

That the protective order exists to prevent injury, damage, or competitive disadvantages resulting from public disclosure of the information suggests that a "use" entirely internal to protective order signatories—developing a joint defense strategy—would not violate its terms, even though the information would be used to develop a strategy beneficial to both the Wisconsin action and the Florida action. In other words, "use" here implies disclosure to the public or those not signatories to the protective order. The reasonableness of this interpretation is supported by decisions holding that the use of information gained by an attorney under a protective order in one case may appropriately be used by the same attorney to develop a strategy applicable to a second action.

In *Dual-Deck*, the Ninth Circuit vacated a district court decision holding the plaintiff in contempt for violating a protective order, the terms of which required that confidential information obtained in the parties' 1987 action be "used solely in the preparation for trial and/or trial of this action" and "shall not be used at any time for any other

purpose whatsoever." 10 F.3d at 694. The district court held that the plaintiff violated the order by using information obtained in discovery in the 1987 action to commence another action against the same defendant in 1990; referencing that information under seal in support of a motion in that action; and requesting discovery in that action based on the confidential information. *Id.* In vacating the district court's decision, the Ninth Circuit explained that the protective order was designed "to protect commercial secrets" and noted that the plaintiff "went to great lengths to avoid revealing in the public filings anything it had learned in discovery." *Id.* at 695–96. It held that interpreting "use" divorced from the order's goal of protecting commercial secrets "would be absurd," explaining:

> Because [plaintiff's] lawyers cannot achieve total amnesia and all their subsequent work in antitrust litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the 1987 suit, the order would prohibit them from representing [plaintiffs] at all in the 1990 litigation. Indeed, lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they "use" what they learned in a prior case "in any way whatsoever" in any "other action." For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets.

*Id.* at 695; *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 406 (S.D.N.Y. 2016) (finding prohibition on use of discovery materials in other cases particularly "problematic" when "two lawsuits have been filed by the same plaintiff, in the same court, on the same legal theories, against two defendants who

already share the same counsel"); *Streck, Inc. v. Rsch. & Diagnostic Sys., Inc.*, 250 F.R.D. 426, 435 (D. Neb. 2008) (finding no violation of similar order because a "general reference to protected documents [in subsequent] proceedings [was] insufficient" when "counsel did not disclose any confidential information"); *Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99 C 0762, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (declining to interpret order "barring future use of confidential information that is independently relevant and discoverable in a subsequent action into a restriction on an attorney's right to practice law").[1] Indeed, at oral argument, Static acknowledged that it would be permissible under the protective order for an attorney who gains knowledge in one case to use that information to develop a strategy applicable to another case.

Under *Taggart*, contempt is improper when there is a fair ground of doubt as to whether a party's actions violate a protective order,[2] and applying that standard here, it is

---

[1] Other district court cases finding violations of protective orders typically involve public disclosures of information or disclosures to parties who are not signatories to the protective orders. *See, e.g.*, *EEOC v. Dial Corp.*, No. 99 C 3356, 2001 WL 1945089, at *4 (N.D. Ill. Dec. 6, 2001) (finding contempt for revealing confidential information to the press); *Grove Fresh Distribs., Inc v. John Labatt Ltd.*, 888 F. Supp. 1427, 1445–47 (N.D. Ill. 1995) (finding contempt for same and for disclosing confidential materials in publicly filed brief in separate action).

[2] To the extent that our earlier decision in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 887–88 (Fed. Cir. 2011) (en banc), might be read as rejecting the fair ground of doubt standard, the Supreme Court's decision in *Taggart* clearly holds that civil contempt is improper when there is a "fair ground of doubt as to" whether a party's actions violated a court order, 139 S. Ct. at 1801–02.

unreasonable to view the protective order as clearly prohibiting the disclosure of confidential documents to develop a joint defense strategy when the recipient is also a signatory to the protective order. The district court's conclusion otherwise was an abuse of discretion. It was objectively reasonable to interpret the protective order as prohibiting only the public disclosure of documents or disclosure to a third party not bound by the protective order. That is not what Mr. Lee did here.

Because we hold that there was a "lack of evidence supporting the [district court's] finding of contempt," the award of sanctions and attorney's fees similarly "cannot stand." *Autotech Techs. LP v. Integral Rsch. & Dev. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007).

## CONCLUSION

For the foregoing reasons, we reverse the district court's contempt order and its corresponding award of sanctions and attorney's fees.

## **REVERSED**

## COSTS

Costs to appellant.

# United States Court of Appeals for the Federal Circuit

---

**STATIC MEDIA LLC,**
*Plaintiff-Appellee*

**v.**

**LEADER ACCESSORIES LLC,**
*Defendant-Appellant*

**JEN-FENG LEE,**
*Appellant*

---

2021-2303

---

Appeal from the United States District Court for the Western District of Wisconsin in No. 3:18-cv-00330-wmc, Judge William M. Conley.

---

REYNA, *Circuit Judge*, dissenting.

I respectfully dissent.

We review the district court's decision regarding sanctions for violation of a discovery order under the law of the regional circuit, here, the Seventh Circuit. *See Graves v. Kemsco Grp., Inc.*, 852 F.2d 1292, 1292 (Fed. Cir. 1988). The Seventh Circuit is clear that the district court is entitled to deference in matters concerning sanctions because the district court is in the best position to determine if a party has complied with its own discovery orders.

*Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 670 (7th Cir. 1996); *see also Smith v. Chi. Sch. Reform Bd. of Trs.*, 165 F.3d 1142, 1144 (7th Cir. 1999) (in reviewing the imposition of sanctions in a suit relating to racial discrimination, the Seventh Circuit stated expressly that "Appellate review of sanctions is deferential"). Accordingly, we cannot, under Seventh Circuit law, reverse the imposition of sanctions for a violation of a discovery order unless it is clear that no reasonable person could concur in the trial court's assessment. *Melendez*, 79 F.3d at 670; *see also Scott v. Chuhak & Tecson*, 725 F.3d 772, 778 (7th Cir. 2013) ("[W]e uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently."). But, here, the majority denies deference to resolve the question differently.

Appellee asserted claims of patent infringement against multiple defendants in separate suits in distinct districts. The defendants in those cases, Appellant and a nonparty to this appeal, entered into a joint defense agreement under which Appellant disclosed Appellee's confidential financial information. That confidential information was used outside this litigation, and more specifically, by the nonparty in the second litigation. The district court determined that Appellant knew or should have known that the disclosure would be used in violation of the protective order. As such, the court exercised its discretion to issue monetary sanctions against Appellant under Federal Rule of Civil Procedure 37(b)(2)(A)(vii).

Protective orders, such as the one at issue in this case, operate as an agreement between the parties meant to promote an efficient discovery process, while safeguarding the secrets and proprietary information of the parties. In exchange for the ability to review such information, outside counsel agrees to protect against the disclosure of the

confidential information to persons outside of that particular litigation.[1]

Here, Appellant alleges that its disclosure was for the purpose of facilitating a "more effective joint defense consultation and discussion." J.A. 98. In other words, Appellant and the nonparty shared and discussed Appellee's confidential information to formulate a joint defense strategy that would be used in both cases, not *solely* this action. Even if Appellant believed that the disclosed information, and the joint defense strategy formulated based on that confidential disclosure, would be used only for the purposes of this litigation, that belief was unreasonable and, in my view, was a violation of the protective order. More specifically, on this record, it would be unreasonable for Appellant to believe that Appellant could make the disclosure and that the nonparty would not use that information, or the joint defense strategy formulated based on the disclosed confidential information, in the second litigation. Indeed, in my view, Appellant was in violation of the protective order independently of whether the information was eventually used in the second litigation. Accordingly, on this record, I would conclude that the district court did not abuse its discretion in determining that Appellant violated the protective order.

---

[1] For example, here, the protective order provides that "[a]ll Confidential information and documents, along with the information contained in the documents, shall be used *solely* for the purpose of this action." J.A. 42 (emphasis added).